**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BILLIE SANFORD and CHARLES
SANFORD,

    Plaintiffs,

v.                                        Case No. 3:16-cv-1578-J-34PDB

OMNI HOTELS MANAGEMENT
CORPORATION,

    Defendant.

## O R D E R

**THIS CAUSE** is before the Court on Defendant Omni Hotels Management Corporation's Motion for Summary Judgment and Memorandum of Law in Support Thereof (Doc. 19; Motion) filed on September 18, 2017. Plaintiffs Billie Sanford and Charles Sanford filed a response on October 13, 2017. See Plaintiffs' Memoranda of Law Opposing Defendant Omni Hotel's Motion for Summary Judgment (Doc. 24; Response). With leave of Court, see Order (Doc. 26), Defendant Omni Hotels Management Corporation (Omni) filed a reply on October 31, 2017, see Defendant's Reply in Support of its Motion for Summary Judgment (Doc. 27; Reply).

After briefing on the Motion had been completed, on November 1, 2017, Plaintiffs filed two exhibits to Billie Sanford's deposition without leave of Court. See Plaintiffs' Rule 56 Notice of Filing Deposition Exhibits (Doc. 28; Notice). Omni moved to strike Plaintiffs' Notice on November 20, 2017. See Defendant's Amended Motion to Strike and/or

Objection to Plaintiff's Filing Deposition Exhibits (Doc. 31; Motion to Strike).[1] Later that day, Plaintiffs sought leave of Court to file the additional evidence. See Plaintiffs' Motion for Leave to File Discovery Evidence for the Court's Consideration (Doc. 32; Motion for Leave). Omni filed a response to Plaintiffs' Motion for Leave on November 28, 2017, see Defendant's Response in Opposition to Plaintiffs' Motion for Leave to File Discovery Evidence (Doc. 33; Motion for Leave Response), and Plaintiffs filed a response to Omni's Motion to Strike on December 12, 2017, see Plaintiffs' Response Opposing Defendant's Amended Motion to Strike and/or Objection to Plaintiff's Filing Motion Deposition Exhibits [sic] (Doc. 35; Motion to Strike Response). Accordingly, this matter is ripe for review.

## I.  Background[2]

Plaintiffs Billie Sanford and Charles Sanford were married in 1977. See Videotaped Deposition of Billie Dade Sanford (Doc. 19-1; Sanford Dep.) at 21. After they settled in Atlanta, Georgia, Billie Sanford founded BJ's Hats and Accessories (BJ's). Id. at 22-23. BJ's was a sole proprietorship that sold women's clothing, handbags, jewelry and fur. Id. at 23, 29, 33. Although Billie Sanford initially operated BJ's out of her home, as the business grew, she set up booths at churches and conventions throughout the nation. Id. at 29-30.

Sometime prior to November 2014, Billie Sanford obtained authorization to set up a booth during the African Methodist Episcopal annual conference (AME Conference). Id.

---

[1] The Court struck Omni's first motion to strike Plaintiffs' Notice, which Omni filed on November 14, 2017. See Order (Doc. 30) (striking Defendant's Motion to Strike and/or Objection to Plaintiff's Filing Deposition Exhibits (Doc. 29)).

[2] The facts recited in this section are either undisputed, or any disagreement has been indicated. Because this case is before the Court on Omni's Motion, the facts recited herein, and all reasonable inferences therefrom, have been viewed by the Court in a light most favorable to Plaintiffs. See T-Mobile S. LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).

at 40, 42-43. The AME Conference was scheduled to take place from Monday, November 3, 2014, through Friday, November 7, 2014, at the Omni Hotel & Resort (Omni Hotel) in Jacksonville, Florida. Id. at 40-42, 48-49. Billie Sanford had never been to the Omni Hotel prior to the AME Conference. Id. at 41-42.

For the first two days of the conference, Billie Sanford arrived at the Omni Hotel at 8:00am,[3] set up her booth in the atrium outside the ballroom where the AME Conference took place, and left for the day at 10:00pm. Id. at 49-50. To avoid leaving her booth unattended, she arranged for someone to deliver lunch to her. Id. at 75.

On Wednesday, November 5, Billie Sanford arrived at her booth at 8:00am wearing her typical convention attire, consisting of tennis shoes, slacks and a top. Id. at 52, 75. However, at the urging of the other vendors, Billie Sanford left her booth around 2:00pm to take advantage of the buffet lunch offered at Juliette's Restaurant & Bistro (Juliette's) located inside the Omni Hotel. Id. at 53, 94. Juliette's had a split level floor plan, such that the veranda with the buffet was on a higher level than the main dining area. Id. at 58. Patrons accessed the veranda by using a three step staircase with hand rails on both sides. Id. at 61, 72, 82-83. The carpet that covered the first level continued up the steps and into the veranda. Id. at 154. The carpet "had a horizontal line through it that ran parallel to the steps." Id. According to Allison Oehler, the manager of the Omni Hotel, no patron had ever tripped on the steps of Juliette's prior to November 5, 2014. See Affidavit of Allison Oehler (Doc. 19-2; Oehler Aff.) ¶4; Sanford Dep. at 108.

Billie Sanford entered Juliette's Bistro through the main entrance and asked the host whether the buffet was still open. See Sanford Dep. at 56, 94. The host said yes,

---

[3] Billie Sanford stayed at the nearby Hampton Inn. See Sanford Dep. at 41.

and began to lead Billie Sanford to the buffet.  Id. at 56-57.   Billie Sanford followed inches behind the host, and kept her eyes fixated on him to see which direction he would go.  Id. at 59-60, 65.   The host did not warn Billie Sanford to watch her step as they approached the veranda.  Id. at 60-61.   As they walked, Billie Sanford's left foot hit the first step, causing her to trip.  Id. at 61.   Her knees landed on the second step.  Id. at 64.   As she struggled to get up, she flipped over such that her back was completely against the steps. Id. at 64-65.   Notably, there were no foreign objects on the steps, Juliette's was well lit, and the weather outside was dry.  Id. at 79, 94-95.

After Billie Sanford fell, the host, Juliette's manager, and a few other patrons asked if she was okay or needed to see a paramedic.  Id. at 69.   Although Billie Sanford felt pain in both of her knees, she told them to "give [her] a chance."  Id. at 70, 74, 83.   She laid on the steps for about five minutes until she felt ready to move.  Id. at 69-70.   The host and manager helped her up the steps, seated her at a table, and served her lunch. Id. at 72.   When Billie Sanford made her way back to her booth, she found the adjacent chair uncomfortable and instead sat on the couch across from her booth.  Id. at 82, 96. She informed the other vendors that her pain was growing more severe.  Id. at 97. Juliette's manager checked on her several times.  Id. at 97.   Eventually, Billie Sanford met with a nurse who took her to the Emergency Center at Baptist Hospital.  Id. at 98, 102.   An emergency physician gave her crutches, instructed her to stay off of her leg and knee, and advised her to visit an orthopedist.  Id. at 103.   Billie Sanford left Jacksonville the next day.  Id. at 105.

Ultimately, the injuries Billie Sanford sustained during her fall have made it difficult for her to walk, sit, stand, lay in bed for long periods of time, or perform housekeeping

functions. Id. at 116-118, 122. In September 2016, Billie Sanford stopped operating BJ's because it became too physically taxing. Id. at 23, 148.

On October 21, 2016, Plaintiffs filed a two count complaint in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida. See Complaint (Doc. 2). Omni removed the action to this Court on December 27, 2016. See Notice of Removal (Doc. 1). In Count I of the Complaint, Billie Sanford asserts a claim for negligence alleging that Omni breached its "duty to use reasonable care in the design of the dining room area and veranda dining area and to warn visitors of all unreasonably safe conditions, dangerous conditions, and tripping hazards not noticeable upon reasonable inspection and upon the exercise of reasonable care." See Complaint ¶¶16-23. In Count II, Charles Sanford asserts a loss of consortium claim. Id. ¶¶24-29.

## II. Standard of Review

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[4] An issue is genuine when the evidence is such that a

---

[4] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly

- 5 -

reasonable jury could return a verdict in favor of the nonmovant. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571,

---

persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

- 6 -

1578 (11th Cir. 1994)).

**III. Discussion**

    **A. Supplemental Evidence**

Before addressing the merits of Plaintiffs' claims, the Court must resolve a dispute between the parties regarding Plaintiffs' efforts to supplement the summary judgment record. Without leave, on November 1, 2017, Plaintiffs filed Exhibits C and D to Billie Sanford's deposition, see Exhibit C (Doc. 28-1) and Exhibit D (Doc. 28-2). Exhibit C consists of a close-up photograph of the steps leading up to the veranda at Juliette's, and Exhibit D depicts a broader view of the same area. See Exhibit C and Exhibit D. After briefing on the Motion had been completed and Omni moved to strike Exhibits C and D, see generally Motion to Strike, Plaintiffs sought leave to file clearer copies of Exhibits C and D (Doc. 32-3; Additional Photographs), as well as Plaintiff Billie Sanford's Answers to Defendant's Interrogatories (Doc. 32-1; Interrogatories), Plaintiff's Response to Defendant's Request for Production of Documents [sic] (Doc. 32-3; Document Production), and Plaintiff Billie Sanford's Supplemental Answers to Defendant's Interrogatories (Doc. 32-4; Supplemental Interrogatories) (collectively, Supplemental Evidence), see generally Motion for Leave. Plaintiffs contend that the Court should consider Exhibits C and D because Omni should have filed these photographs as attachments to Billie Sanford's deposition transcript. See Motion for Leave at 2-3. Additionally, Plaintiffs suggest that the Supplemental Evidence serves to authenticate the photographs. Id.

In the Motion to Strike, Omni contends that Exhibits C and D are due to be stricken because Plaintiffs' filing: (1) constitutes an impermissible sur-reply in violation of Rule 3.01(c), Local Rules, United States District Court, Middle District of Florida (Local Rule(s));

(2) has not been properly authenticated; and (3) violates the best evidence rule. See Motion to Strike at 2-3. Additionally, Omni submits that Plaintiffs' Motion for Leave should be denied because Plaintiffs have "failed to establish good cause or excusable neglect for the untimely filing" and Plaintiffs' additional evidence is irrelevant to the Motion. See Motion for Leave Response at 2-3.[5]

Here, the Court finds that Exhibits C and D are not due to be stricken. First, the Court is not persuaded that Plaintiffs' filing of Exhibits C and D constitutes an impermissible sur-reply. Notably, Omni filed Billie Sanford's deposition transcript in support of the Motion and relied on it, yet Omni omitted the exhibits. See generally Sanford Dep. In doing so, Omni has failed to provide the Court with a complete copy of Billie Sanford's deposition. See Case Management and Scheduling Order and Referral to Mediation (Doc. 14; Scheduling Order) at 3 ("Please deliver a courtesy copy of all dispositive and Daubert motions and responses, including copies of all relevant exhibits and depositions, to the chambers of the undersigned."). Thus, because Omni should have included the exhibits as part of the deposition, Plaintiffs' belated filing of Exhibits C and D to that deposition does not constitute an improper sur-reply in violation of this Court's Local Rules.

Further, the Court's consideration of Exhibits C and D would not violate the best evidence rule. See Motion to Strike at 2-3. The best evidence rule provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or

---

[5] Notably, in the Motion to Strike Response, Plaintiffs adopt "the motion, facts, exhibits thereto and argument set forth" in the Motion for Leave. See Motion to Strike Response at 2. Such incorporation by reference is improper under this Court's Local Rules. Indeed, to oppose a motion, a party must file a response that includes a memorandum of legal authority in a single document not to exceed twenty pages. See Local Rule 3.01(b). Improper incorporation by reference "foists upon the Court the burden of sifting through irrelevant materials to find the materials referenced . . ." Mobile Shelter Sys. USA, Inc. v. Grate Pallet Solutions, LLC, 845 F. Supp. 2d 1241, 1253 (M.D. Fla. 2012), aff'd in part, 505 F. App'x 928 (11th Cir. 2013).

photograph is required." See Rule 1002 of the Federal Rules of Evidence. However, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." See Rule 1003 of the Federal Rules of Evidence. To challenge the admissibility of a duplicate, a party must demonstrate "a genuine issue as to the authenticity of the unintroduced original, or as to the trustworthiness of the duplicate, or as to the fairness of substituting the duplicate for the original." See United States v. Georgalis, 631 F.2d 1199, 1205 (5th Cir. 1980).[6] Here, the Court finds that Omni has failed to raise a genuine issue with respect to any of these concerns. Omni simply describes the proffered exhibits as "grainy and distorted" photocopies and speculates that they inaccurately portray the originals, but fails to provide any evidence to support its assertion. See United States v. Chang An-Lo, 851 F.2d 547, 557 (2d Cir. 1988) (finding speculation insufficient to challenge the admissibility of a duplicate). Accordingly, Exhibits C and D are not due to be stricken on this basis.

Additionally, the Court finds that Omni has properly authenticated Exhibits C and D. To authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." See Rule 901(a) of the Federal Rules of Evidence. With respect to photographs, it is settled that authentication "does not require testimony from the person who actually operated the camera." United States v. Stephens, 202 F. Supp. 2d 1361, 1368 (N.D. Ga. 2002). Instead, a photograph may be authenticated "by the testimony of a witness with sufficient knowledge that the

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

photograph is a fair and accurate depiction of the relevant scene." <u>Chambers v. Bridgestone Retail Operations, LLC</u>, No. 1:12-CV-3925-MHC, 2015 WL 11199156, at *1 (N.D. Ga. Feb. 27, 2015). Therefore, although Billie Sanford did not take the photographs, her deposition testimony that the photographs depict the steps at Juliette's is sufficient to authenticate the photographs. <u>See</u> Sanford Dep. at 85, 87-88. Notably, Billie Sanford was not confident that Exhibit D "depict[ed] the area of the incident <u>as it was at the time of the incident</u>." <u>Id.</u> at 87-88 (emphasis added). Indeed, Billie Sanford acknowledged that Exhibit D shows the steps after Omni "started constructing a handicap ramp and some other stuff." <u>Id.</u> at 87. Nevertheless, Billie Sanford's testimony that the photographs depict the site where she fell is sufficient for purposes of authentication. Indeed, "these photographs are not subject to exclusion merely because they do not depict the exact area of the incident or the condition of the premises on the day Plaintiff fell." <u>Chambers</u>, 2015 WL 11199156 at *2. Those issues go "to the weight and credibility of the evidence rather than its admissibility." <u>Id.</u> Accordingly, the Court finds that Plaintiffs have sufficiently authenticated Exhibits C and D. As such, Omni's Motion to Strike is due to be denied.

In light of the foregoing, the Court finds that Plaintiffs' Motion for Leave is due to be denied as moot. Plaintiffs seek to introduce the Supplemental Evidence in order to authenticate Exhibits C and D. <u>See generally</u> Motion for Leave. However, the Supplemental Evidence is unnecessary because Billie Sanford's deposition testimony suffices to authenticate the photographs.

**B. Omni's Summary Judgment Motion**

In the Motion, Omni contends that it is entitled to judgment in its favor on Billie Sanford's negligence claim because Omni had no duty to warn her that the veranda was elevated. See Motion at 7-12. In response, Plaintiffs contend that the carpet created the illusion that Juliette's was level and transformed the steps into a latent danger, of which Omni had a duty to warn. See generally Response.

To prevail on a negligence claim, a plaintiff must establish four elements: (1) "A duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks"; (2) "A failure on the [defendant's] part to conform to the standard required: a breach of the duty . . . ."; (3) "A reasonably close causal connection between the conduct and the resulting injury"; and (4) "Actual loss or damage . . . ." Clay Elec. Co-op., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003). In a premises liability action, "the defendant's duty to the plaintiff is dependent on the plaintiff's status to the land." Nicholson v. Stonybrook Apartments, 154 So. 3d 490, 492 (Fla. 4th DCA 2015) (internal citation omitted). Under Florida law, a visitor may be categorized as an invitee, licensee, or trespasser. See Seaberg v. Steak N' Shake Operations, Inc., 154 F. Supp. 3d 1294, 1299 (M.D. Fla. 2015), aff'd, 697 F. App'x 941 (11th Cir. 2017). Notably, where the essential material facts are not in dispute, the legal status of the person injured on the premises is a question of law for the Court. See Wood v. Camp, 284 So. 2d 691, 696 (Fla. 1973); Barrio v. City of Miami Beach, 698 So. 2d 1241, 1243 (Fla. 3d DCA 1997).

Here, the undisputed material facts establish that Billie Sanford was an invitee at the time of her injury. An invitee is one "'who enters upon the premises of another for

purposes connected with the business of the owner or occupant of the premises.'" Post v. Lunney, 261 So. 2d 146, 147-48 (Fla. 1972) (citation omitted).[7] The parties do not dispute that Billie Sanford was injured while visiting Juliette's as a patron, see Sanford Dep. at 55, 61, and Florida courts view restaurant patrons as invitees, see Chavez v. McDonald's Rest. of Fla., Inc., 108 So. 3d 1124, 1125 (Fla. 5th DCA 2013); Izquierdo v. Gyroscope, Inc., 946 So. 2d 115, 118-19 (Fla. 4th DCA 2007); Graham v. Langley, 683 So. 2d 1147, 1151 (Fla. 5th DCA 1996) (W. Sharp, J., dissenting on other grounds). Thus, the Court must determine the duties that Omni owed to Billie Sanford as an invitee, and whether a genuine issue of fact exists as to whether Omni breached any duty owed to her.

Under Florida law, a landowner owes two duties to a business invitee:

> (1) to use reasonable care in maintaining its premises in a reasonably safe condition; and (2) to give the invitee warning of concealed perils that are or should be known to the landowner and that are unknown to the invitee and cannot be discovered through the exercise of due care.

St. Joseph's Hosp. v. Cowart, 891 So. 2d 1039, 1040 (Fla. 2d DCA 2004). Here, Plaintiffs allege that Omni violated the second of these two duties[8] by failing to warn Billie Sanford of "the dangerous 'tripping' hazard, the optical illusion and/or need to 'step up' when walking to the veranda dining area." See Complaint ¶13; see also id. ¶¶19, 21.

---

[7] Distinctly, a licensee is "one 'who enters upon the property of another for his own convenience, pleasure, or benefit,'" and a trespasser is "one who enters the premises of another without license, invitation, or other right, and intrudes for some definite purpose of his own, or at his convenience, or merely as an idler with no apparent purpose, other than perhaps to satisfy his curiosity." Post, 261 So. 2d. at 147 (citation omitted).

[8] Although Plaintiffs criticize the design of the stairwell as creating a hidden tripping hazard, they do not appear to assert that Omni negligently failed to maintain its premises. See generally Complaint; see also Response at 3-4 (arguing only the duty to warn issue in response to the Motion). Nonetheless, the Court considers Plaintiffs' challenges broadly in an abundance of caution.

With respect to the duty to warn, an owner or occupier has "a duty to warn invitees of known concealed perils that would not be discovered by invitees through the use of due care." Arnoul v. Busch Entm't Corp., No. 8:07-cv-1490-T-24-TGW, 2008 WL 4525106, at *4 (M.D. Fla. Oct. 6, 2008). Nonetheless, "'[a]n owner is entitled to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own sense[s], and is not required to give the invitee notice or warning of an obvious danger.'" Aventura Mall Venture v. Olson, 561 So. 2d 319, 320 (Fla. 3d DCA 1990); City of Melbourne v. Dunn, 841 So. 2d 504, 505 (Fla. 5th DCA 2003) ("An owner of land is not required to give an invitee warning of an obvious danger, and is entitled to assume an invitee will perceive something obvious."). Therefore, an occupier has no duty to warn "when the condition is open and obvious." Arnoul, 2008 WL 4525106 at *4.

Notably, "Florida courts have consistently held that 'while the open and obvious danger doctrine may in certain circumstances discharge the duty to warn, it does not discharge the landowner's duty to maintain the property in a reasonably safe condition.'" Potash v. Orange Cnty. Lake Country Club, Inc., No. 6:03CV1652ORL18KRS, 2005 WL 1073926, at *3 (M.D. Fla. Apr. 29, 2005) (quoting Marriott Int'l, Inc. v. Perez-Melendez, 855 So. 2d 624, 631 (Fla. 5th DCA 2003)); Aaron v. Palatka Mall, LLC, 908 So. 2d 574, 577-78 (Fla. 5th DCA 2005); Regency Lake Apartments Assocs., Ltd. v. French, 590 So. 2d 970, 973 (Fla. 1st DCA 1991) ("The discharge of the duty to warn does not relieve [the defendant] of its duty to maintain the premises in a reasonably safe condition by correcting or eliminating dangers."). This duty requires a defendant to exercise ordinary care. Potash, 2005 WL 1073926 at *3. As such, with respect to a plainly visible condition, an owner or occupier can be held liable where it "should anticipate the harm despite the fact

that the dangerous condition is open and obvious." Aaron, 908 So. 2d at 576-77; Ashcroft v. Calder Race Course, Inc., 492 So. 2d 1309, 1311 (Fla. 1986) ("'In any case where the occupier as a reasonable person should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required.'" (quoting Prosser and Keaton, Law of Torts § 61 (5th ed. 1984))). "Concerning such hazards, the owner can be held liable to the invitee for failing to exercise reasonable care, even though the invitee was [herself] negligent in encountering the known danger, thus subjecting [her] claim to the defense of comparative negligence." Stewart v. Boho, Inc., 493 So. 2d 95, 96 (Fla. 4th DCA 1986); see also Lynch v. Brown, 489 So. 2d 65, 67 (Fla. 1st DCA 1986) ("[A] plaintiff's knowledge of a dangerous condition does not negate a defendant's potential liability for negligently permitting the dangerous condition to exist; it simply raises the issue of comparative negligence and precludes summary judgment.").

However, an owner or occupier "is not responsible for preventing any and all injuries to his invitees, even when caused by conditions on his property, because 'some injury-causing conditions are so open and obvious that they can be held as a matter of law not to give rise to liability as dangerous conditions.'" Arnoul, 2008 WL 4525106, at *2 (quoting Taylor v. Universal City Prop. Mgmt., 779 So. 2d 621, 622 (Fla. 5th DCA 2001)). Indeed, Florida law recognizes that "[s]ome conditions are simply so open and obvious, so common and so ordinarily innocuous, that they can be held as a matter of law to not constitute a hidden dangerous condition." Circle K Convenience Stores, Inc. v. Ferguson, 556 So. 2d 1207, 1208 (Fla. 5th DCA 1990) (per curiam). Thus, summary judgment for an owner or occupier is appropriate where it can establish that the open and obvious

condition was not unreasonably dangerous in that there was no reason for the owner or occupier to anticipate, under the circumstances, that the condition would cause injury. See Miller v. Slabaugh, 909 So. 2d 588, 589-90 (Fla. 2d DCA 2005).

Of particular relevance to this case, a jurist of this Court recently recognized the existence of an "abundance of Florida case law hold[ing] that steps, a change in floor levels, and uneven flooring are so open and obvious that they do not constitute negligence as a matter of law." White v. W.G. Parcel B. LLC, No. 6:15-cv-867-Orl-22KRS, 2016 WL 9525667, at *4 (M.D. Fla. Nov. 29, 2016) (collecting cases). Accordingly, a landowner would be under no duty to warn an invitee that multiple floor levels are present when they are obvious and not inherently dangerous. See Schoen v. Gilbert, 436 So. 2d 75, 76 (Fla. 1983); Hoag v. Moeller, 82 So. 2d 138, 139 (Fla. 1955). However, "[t]here are two exceptions to the general rule in Florida that the existence of multiple floor levels is not a dangerous condition: (1) that a plaintiff establish an uncommon design or mode of construction, or (2) that the layout created an optical illusion." White, 2016 WL 9525667 at *5; see also Casby v. Flint, 520 So. 2d 281, 282 (Fla. 1988) (discussing the uncommon design or mode of construction exception); Allen v. Young, 807 So. 2d 704, 705 (Fla. 4th DCA 2002) (finding neither exception applicable). These exceptions apply where "the character, location or surrounding conditions of the step-down [or arguably a step-up] are such that a prudent person would not anticipate it." Northwest Fla. Crippled Children's Ass'n v. Harigel, 479 So. 2d 831, 832 (Fla. 1st DCA 1985).

Here, Plaintiffs do not contend that the steps at Juliette's constitute an uncommon design or mode of construction. See generally Response.[9] Instead, Plaintiffs argue that

---

[9] In the Motion, Omni contends that summary judgment is due to be entered in its favor because Plaintiffs fail to introduce expert testimony indicating that the change in levels at Juliette's constitutes an

the carpet created an optical illusion that Juliette's was all one level, and thereby, transformed the steps into a tripping hazard. Id. at 4. "However, Florida courts have rejected the argument that 'an optical illusion of flatness' is created by the blending of the color and [pattern] of the step with the ground below." White, 2016 WL 9525667 at *5 (collecting cases). Indeed, "[i]t is a matter of general knowledge that there are multiple steps in hotels, restaurants, storerooms and other business establishments throughout Florida with the same color as that of the floors." Bowles v. Elkes Pontiac Co., 63 So. 2d 769, 772 (Fla. 1953); see also Hoag, 82 So. 2d at 139 (citation omitted). The case law suggests that in order to create an optical illusion of flatness, the change in floor level must be concealed by something more than a uniform color scheme. For example, in Kupperman v. Levine, 462 So. 2d 90 (Fla. 1st DCA 1985), the court reversed the dismissal of a complaint based on its finding that the plaintiffs sufficiently pled that the landowner created the illusion of a level floor by alleging that the change of floor level in the middle of a room was concealed by "chairs with chair backs and seats of even height, some of which had longer legs to accommodate the change in floor grade." Id. at 91. Similarly, in Harigel, the court affirmed a jury verdict that change in floor level presented a hidden danger because a nearby elevated display rack diverted the customer's focus away from the step. 479 So. 2d at 832-33.

Here, Plaintiffs contend that "there exist[s] a genuine issue of material fact as to whether the Defendant Omni Hotels should have warned Mrs. Sanford and other invitees of this hidden tripping hazard." See Response at 4. However, Plaintiffs fail to present

---

uncommon design or mode of construction. See Motion at 11-12; see generally Reply. However, because Plaintiffs do not present any argument regarding the uncommon design/mode of construction exception, the Court need not address Omni's contention.

even a scintilla of evidence to suggest that anything besides the carpet may have concealed the steps. Notably, the parties do not dispute that Billie Sanford was the first patron to trip over the steps. See Oehler Aff. ¶4; Sanford Dep. at 108. Further, there is no genuine dispute that at the time of the incident, there were no foreign objects on the steps, that Juliette's was well lit, and that the weather outside was dry. See Sanford Dep. at 79, 94-95. Contrary to Plaintiffs' contentions, the evidence reflects that the presence of the steps was open and obvious. Not only were the steps surrounded by rails on either side, see Sanford Dep. at 82-83, but Billie Sanford followed "inches" behind the host who "served as a pilot as she wended her way" to the veranda, id. at 59-60; Hoag, 82 So. 2d at 139 (finding that a workman who led plaintiff through a home did not act negligently in failing to warn plaintiff of a change in levels). Thus, Omni rightfully expected that the steps would have been obvious to Billie Sanford "upon the ordinary use of [her] own senses," see Krol v. City of Orlando, 778 So. 2d 490, 493 (Fla. 5th DCA 2001), and the steps do not constitute a dangerous condition as a matter of law. Therefore, the Court finds that Omni did not maintain its premises in an unreasonably unsafe condition, and was under no duty to warn Billie Sanford of the change in levels. See Olson, 561 So. 2d at 320 (finding no negligence where "the curb was plainly visible and could have been seen by [plaintiff] had she been looking where she was going.").

Plaintiffs' case-law fails to persuade the Court that a genuine issue of material fact exists regarding whether the steps had been transformed into a latent dangerous condition so as to preclude entry of summary judgment. Plaintiffs' cases are readily distinguishable from this action because they involve situations where the plaintiff introduced expert testimony to create a factual dispute, see Slaats v. Sandy Lane Residential, LLC, 59 So.

3d 320, 321 (Fla. 3d DCA 2011) ("[T]he plaintiffs filed the affidavit of an expert stating that the step down presented a unique, special hazard" because the drop was hidden and unexpected), contain dissimilar fact patterns and involve causation issues, see Goode v. Walt Disney World Co., 425 So. 2d 1151, 1154 (Fla. 5th DCA 1982) (addressing the failure to provide adequate fencing and issues of fact regarding causation) and McCabe v. Walt Disney World Co., 350 So. 2d 814, 815 (Fla. 4th DCA 1977) (addressing the safety of an amusement park attraction), and are procedurally distinct, see LeMay v. U.S.H. Props., Inc., 338 So. 2d 1143, 1144 (Fla. 2d DCA 1976) (denying a motion to dismiss) and Pensacola Rest. Supply Co. v. Davison, 266 So. 2d 682, 684 (Fla. 1st DCA 1972) (affirming the lower court's denial of a motion for a directed verdict). Therefore, these cases do not persuade the Court that the Motion is due to be denied.

Importantly, summary judgment is due to be entered in Omni's favor regardless of the Court's ruling on Omni's Motion to Strike and Plaintiffs' Motion for Leave because none of Plaintiffs' additional evidence is material. The photographs do not show that any circumstances existed that could have transformed the steps into an inherently dangerous condition.[10] To the contrary, the photographs confirm that the steps were surrounded by rails on either side, the lighting at Juliette's was sufficient, and the steps themselves were readily visible and obvious. See Exhibits C and D. Thus, contrary to Plaintiffs' contention, the photographs illustrate that had Billie Sanford used her ordinary senses, she would have seen the steps. See Head v. Norfolk S. Ry. Co., No. 2:15-cv-02118-RDP, 2017 WL 4030580, at *13 n.20 (N.D. Ala. Sept. 13, 2017) (declining to address the admissibility of non-material evidence); Brandon v. GlaxoSmithKline, LLC, No. 7:15-cv-

---

[10] The clearer copies of Exhibits C and D which Plaintiffs seek to introduce in the Motion for Leave do not rectify these deficiencies.

01804-RDP, 2017 WL 2876184, at *5 n.7 (N.D. Ala. July 6, 2017) (same); Globaltech, LLC v. Air Tiger Express, Inc., No. 05-22588-CIV-HIGHSMITH, 2007 WL 1111247, at *5 (S.D. Fla. Apr. 11, 2007) (same); Fla. Power & Light Co. v. McGraw Edison Co., 696 F. Supp. 617, 619 n.4 (S.D. Fla. 1988), aff'd, 875 F.2d 873 (11th Cir. 1989) (same).

Ultimately, because Plaintiffs failed to introduce any evidence to demonstrate that the presence of the steps created an unreasonably dangerous condition, the Court finds that Omni was not negligent as a matter of law, and judgment is due to be entered in Omni's favor on Count I of the Complaint. Additionally, because Charles Sanford's loss of consortium claim is derivative of Billie Sanford's negligence claim, judgment is also due to be entered in Omni's favor on Count II. See In re Trasylol Prods. Liability Litig., No. 08-MD-1928, 2013 WL 1192300, at *16 (S.D. Fla. Mar. 22, 2013) (granting summary judgment in favor of defendant on plaintiffs' loss of consortium claim because it is "derivative of [plaintiffs'] underlying substantive claims each of which have failed."); Broderick v. Danek Med., Inc., No. 95-8644-CIV-RYSKAMP, 1999 WL 1062135, at *8 (S.D. Fla. Apr. 9, 1999) (same).[11] Accordingly, the Motion is due to be granted. In light of the foregoing, it is

**ORDERED:**

1. Defendant Omni Hotels Management Corporation's Motion for Summary Judgment and Memorandum of Law in Support Thereof (Doc. 19) is **GRANTED**.

2. Defendant's Amended Motion to Strike and/or Objection to Plaintiff's Filing Deposition Exhibits (Doc. 31) is **DENIED**.

---

[11] The Eleventh Circuit instructs that "[w]hen a party moves for final, not partial, summary judgment, . . . 'it [becomes] incumbent upon the [nonmovant] to respond by, at the very least, raising in their opposition papers any and all arguments or defenses they felt precluded judgment in [the moving party's] favor.'" Case v. Eslinger, 555 F.3d 1317, 1329 (11th Cir. 2009) (third, fourth and fifth alteration in original) (quoting Johnson v. Bd. of Regents of the Univ. of Ga., 263 F.3d 1234, 1264 (11th Cir. 2001)). Plaintiffs presented no argument in support of Count II. See generally Response.

3. Plaintiffs' Motion for Leave to File Discovery Evidence for the Court's Consideration (Doc. 32) is **DENIED as MOOT**.

4. The Clerk of the Court is directed to enter **JUDGMENT** in favor of Omni Hotels Management Corp. and against Plaintiffs Billie Sanford and Charles Sanford.

5. The Clerk of the Court is further directed to terminate all remaining pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 15th day of March, 2018.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

Lc25
Copies to:
Counsel of Record