United States District Court
Middle District of Florida
Jacksonville Division

BILLIE SANFORD,

       *Plaintiff,*

V.                                     No. 3:16-CV-1578-J-34PDB

OMNI HOTELS MANAGEMENT CORPORATION,

       *Defendant.*

---

## Report and Recommendation

Following a four-day trial, a jury returned a verdict for defendant Omni Hotels Management Corporation and against plaintiff Billie Sanford. Doc. 111. The Court entered final judgment and ordered that Omni, as the prevailing party, "shall be entitled" to an award of costs under 28 U.S.C. § 1920. Doc. 112.

Before the Court is Omni's proposed bill of costs under § 1920 and Fed. R. Civ. P. 54. Doc. 114. Omni provides a ledger detailing the requested costs. Doc. 120. At an oral argument, Omni amended the amount requested from **$5981.27** to **$4972.12** to reflect only those figures supported by the ledger and to withdraw a request for appellate costs.[1] Neither party presents argument on costs.

Separately before the Court is Omni's motion for an award of attorney's fees against Ms. Sanford under Florida's offer-of-judgment statute and corresponding rule—Fla. Stat. § 768.79 and Fla. R. Civ. P. 1.442. Doc. 115. Omni incurred the fees

---

[1] The oral argument was recorded. The courtroom deputy at the oral argument can provide information on ordering a transcript. *See* Doc. 127 (minutes).

after serving a proposal of settlement for **$10,000** that Ms. Sanford left unanswered.[2] Doc. 61; Doc. 115 at 21–28. Omni also requests post-judgment interest on the award. Doc. 115 at 18. Omni provides affidavits of its lawyers—Michael Milton and Clay Hoblit—and separate ledgers from each lawyer's firm detailing the work performed. Docs. 115-1, 115-2. At the oral argument, Omni amended the amount requested from **$101,830** to **$69,881** to eliminate attorney's fees for traveling, for learning the local rules, for litigating the amount of attorney's fees, and for work insufficiently explained due to redactions. Omni also suggested a further ten-percent reduction to account for "block billing."[3] And Omni withdrew requests for nontaxable expenses of **$4889.98** and pre-judgment interest.

Ms. Sanford opposes the award. Doc. 118. She contends: (1) Georgia—not Florida—law governs and Omni is ineligible for an award under Georgia law; (2) the Court should decline to award attorney's fees because Omni made its proposal for settlement without good faith; and (3) the Court should award Omni less than the amount Omni requests because, among other reasons, Omni's lawyers duplicated work. Docs. 118, 125.

## I.   Background

In November 2014, at Juliette's Bistro, a restaurant in the Omni Hotel in downtown Jacksonville, Ms. Sanford tripped on the first step of a set of stairs, fell, and sustained injuries. Doc. 2 ¶ 15.

---

[2]Florida courts use "offer of judgment" and "proposal for settlement" interchangeably. *Ruiz v. Policlinica Metropolitana, C.A.*, 260 So. 3d 1081, 1086 n.3 (Fla. 3d DCA 2018). The statute uses the former term, Fla. Stat. § 768.79, and the rule uses the latter term, Fla. R. Civ. P. 1.442. Omni uses the latter term.

[3]Block billing involves a lawyer including multiple tasks in a single time entry, whereas "task billing" involves a lawyer itemizing the time spent on a specific task on a specific date.

Nearly two years later, in October 2016, Ms. Sanford and her husband, both represented by Kimberly Morant and Reginald Luster, sued Omni in state court for negligence (Ms. Sanford) and loss of consortium (Mr. Sanford). Doc. 2. According to them, the "color of the horizontal lines of the carpet and the color of the three steps leading to the veranda dining area were of similar colors and blended creating a dangerous, optical illusion that the carpet extended up to the veranda dining area without the need to step up." Doc. 2 ¶ 9. For the negligence claim, Ms. Sanford demanded damages, costs, and "such further relief as the Court may deem just and proper." Doc. 2 at 5–6.

Omni, represented by Mr. Milton, removed the action based on diversity jurisdiction under 28 U.S.C. § 1332, Doc. 1, and filed an answer and defenses, including that Omni was not negligent, Ms. Sanford was comparatively negligent, the conditions about which she complained were open and obvious, and her injuries resulted from pre-existing injuries, Doc. 6. Mr. Milton has represented Omni throughout Florida for six years. Doc. 115 at 15; Doc. 115-1 at 2.

Early in the action, the Court permitted Ms. Morant to withdraw as counsel for the Sanfords because she had left her law firm. Doc. 7.

In February 2017, the Court set the trial for the February 2018 term. Doc. 14. Later, the Court sua sponte continued the trial to the April 2018 term. Doc. 34.

Discovery—including a deposition of Ms. Sanford—proceeded. During her deposition, she testified: she has vertigo, she had been at the Omni for two days before the fall, she had fallen on both knees, she had undergone knee replacement surgeries on both knees before the fall, she has filed other lawsuits, and "there are others out there waiting." *See* Doc. 19-1 at 16, 19, 26, 35–40, 49–50, 64, 83, 113–14, 122, 153.

After discovery, Omni moved for summary judgment. Doc. 19. Both sides relied on Florida law. *See* Doc. 19 at 6 (Omni's motion stating, "The core principles of Florida tort law governing trip and falls which are relevant to this diversity action may be

3

applied to Plaintiff's negligence claim"); Doc. 24 at 3 (the Sanfords' response relying on Florida law to argue Omni had a duty to warn).

While the motion for summary judgment was pending, the parties participated in mediation, which resulted in an impasse. Doc. 21.

Applying Florida law, the Court granted summary judgment for Omni. Docs. 41, 42. The Court concluded the Sanfords had failed to introduce sufficient evidence to show the steps created an unreasonably dangerous condition. Doc. 41 at 19.

The Sanfords appealed. Doc. 43. In the appellate briefs, both sides relied on Florida law. *See* Appeal No. 18-11091 (11th Cir.): Appellant Br. at 12–19 (May 11, 2018) (the Sanfords' principal brief); Appellee Br. at 12–24 (June 11, 2018) (Omni's response brief); Reply Br. at 6–7 (July 5, 2018) (the Sanfords' reply brief).

While the appeal was pending, Omni filed in this Court a proposed bill of costs for **$2859.95** under § 1920 and Rule 54. Doc. 45 at 1–2. Omni attached a ledger detailing the requested costs, consisting of **$154.80** for photocopies, **$1413** for copies of medical records, **$892.15** for a deposition transcript, and **$400** for the filing fee. Doc. 45 at 3–4. The Sanfords filed no objection, and the undersigned entered a report and recommendation recommending taxing costs against the Sanfords for **$2836.75**, with the slight difference between the amount requested and the amount recommended based on the fact that some copies were **$.50** a page while other copies were **$.10** a page, and no reason for the difference was provided or apparent. Doc. 47 at 4–5.

In March 2019, the Eleventh Circuit reversed and remanded, holding "there is a genuine dispute of material fact about whether the carpeting created the illusion of a level floor and thus presented a dangerous condition about which Omni had a duty to warn invitees like Sanford." Doc. 48 at 9–10. The Eleventh Circuit observed that Ms. Sanford had "brought a negligence claim under Florida law." Doc. 48 at 2. Because Mr. Sanford had not raised on appeal his claim for loss of consortium, the

Eleventh Circuit treated the claim abandoned. Doc. 48 at 2 n.1. Based on the decision, the undersigned vacated the report and recommendation on Omni's original proposed bill of costs. Doc. 49.

Following remand, in July 2019, the Court scheduled the trial for the October 2019 term, with the term beginning on October 7, 2019. Doc. 55. A few days later, Mr. Hoblit—a Texas lawyer who serves as Omni's national trial counsel—moved to specially appear to represent Omni, with Mr. Milton serving as local counsel. Doc. 56; Doc. 115 at 15. The undersigned granted the motion. Doc. 60. A few days after the motion, Ms. Sanford amended her initial disclosures to claim damages totaling **$1,074,884.58**.[4]

On August 23, 2019, at 4:03 p.m.—the same day Mr. Luster and Mr. Milton were in Atlanta for a deposition of Anuj Gupta, M.D. (a witness for the Sanfords)—, Omni filed on the docket a proposal under Florida's offer-of-judgment statute for settlement of Ms. Sanford's claim for **$10,000** and a separate proposal for settlement of Mr. Sanford's claim for an amount not in the record. Docs. 61, 62, 115 at 21–28. Ten minutes later, Mr. Milton's legal assistant emailed the proposals to Mr. Luster. Doc. 115 at 21. The proposal to Ms. Sanford included a proposed settlement agreement. Doc. 115 at 26–28. The Sanfords filed no response.[5]

In September 2019, the parties submitted a pretrial statement, both sides citing Florida law. Doc. 72 at 4, 9. In the statement, Ms. Sanford claimed damages totaling **$1,179.925.24**, and Mr. Sanford claimed damages of **$100,000**. Doc. 72 at 6–7. Ms. Sanford filed a motion in limine, Doc. 67, and Omni filed a motion in limine,

---

[4]The amended disclosures themselves are not in the record. On the record at the oral argument, Mr. Milton stated the date of the amended disclosures (July 24, 2019) and the total in the amended disclosures (**$1,074,884.58**).

[5]To accept an offer, a party must file with the court a written acceptance within thirty days after service. Fla. Stat. § 768.79(4). If the party fails to timely file the written acceptance, the offer is considered rejected. Fla. R. Civ. P. 1.442(f)(1). Here, Ms. Sanford does not dispute she rejected Omni's proposal for settlement.

Doc. 68. The Court granted in part and denied in part her motion and granted Omni's motion. Doc. 73.

From October 28 to October 31, 2019, the Court conducted voir dire and trial. Docs. 104–06, 113. Considering the Eleventh Circuit's treatment of Mr. Sanford's consortium claim as abandoned, the Court ruled "the only claim properly before the Court at this stage of the proceedings is Billie Sanford's negligence claim." Doc. 100.

Six witnesses testified. Docs. 104–06. Mr. Luster alone tried the case for Ms. Sanford, and Mr. Milton and Mr. Hoblit together tried the case for Omni. Docs. 102, 104, 105, 106, 113. Mr. Hoblit was Omni's lawyer for jury selection, opening statement, witness examinations, and closing argument; Mr. Milton was Omni's lawyer for the charge conference and motions.[6]

The parties proposed instructions, using Florida's standard jury instructions. Docs. 83, 94. The Court instructed the jury on Florida law. *See* Doc. 109 at 16, 19, 21 (the Court's proposed jury instructions on negligence, comparative negligence, and damages for personal injury; citing as sources Florida cases and Florida standard jury instructions); Doc. 110 at 11–16 (the Court's corresponding final jury instructions). Ms. Sanford asked the jury to award her **$1.2 million**. Doc. 115 at 10.

In less than an hour, which included lunch, the jury returned a verdict for Omni. Doc. 106 (minutes stating the jury began deliberating at 1:11 p.m. and returned a verdict at 2:09 p.m.); Doc. 111 (verdict). On November 4, 2019, the Court entered final judgment for Omni and against Ms. Sanford, ordering that Omni "shall be entitled" to an award of costs under § 1920. Doc. 112. This time, Ms. Sanford filed no appeal.

---

[6]A transcript for only one day of the trial was ordered. The court reporter at the trial can provide information on ordering a transcript. *See* Docs. 104–06 (minutes).

Omni's current proposed bill of costs, Doc. 114, Omni's motion for attorney's fees, Doc. 115, and Ms. Sanford's response, Doc. 118, followed.

For its current proposed bill of costs, Omni uses court form AO 133 (Rev. 12/09). Unlike Omni had for its original bill of costs, Doc. 45, Omni failed to include a ledger detailing the requested costs. *Compare* Doc. 45 *with* Doc. 114. The undersigned instructed Omni to provide support for the requested costs. Doc. 119. Omni provides the same ledger it provided with its original bill of costs and an additional sheet detailing costs incurred since. Doc. 120. The undersigned also asked Omni to provide authority for its request for expenses and asked Ms. Sanford to identify the billing entries she contends are duplicative. Doc. 119. Both sides supplemented their filings. Docs. 121, 122.

Because the motion for attorney's fees lacked a certificate required by Local Rule 3.01(g), the undersigned directed counsel to confer in good faith to try to resolve the issues. Doc. 123. The undersigned heard oral argument on the unresolved issues. Docs. 123, 127. At the oral argument, Omni amended some amounts it had requested and withdrew some requests it had made and suggested a ten-percent reduction to account for Mr. Milton's use of block billing. Doc. 127. Ms. Sanford made no concession, and after the oral argument, she filed a response identifying discrete work by Mr. Milton and adding arguments.[7] Doc. 125.

## II. Law & Analysis

### A. *Proposed Bill of Costs*

Neither side provides argument about Omni's latest proposed bill of costs.

---

[7]The undersigned did not provide Ms. Sanford leave to file another response. Still, the undersigned analyzes the arguments in the response considering Omni's failure to object to the response and the Court's special responsibility to scrutinize requested attorney's fees.

Federal Rule of Civil Procedure 54(d)(1) provides that costs "should be allowed to the prevailing party" unless federal law or a court order provides otherwise. The rule codifies the "venerable presumption" that the prevailing party is entitled to costs. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013).

In a diversity action, the Court applies this federal rule, not a state rule or statute. *Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 946 (10th Cir. 2020); *Humann v. KEM Elec. Co-op., Inc.*, 497 F.3d 810, 813 (8th Cir. 2007).

The rule's use of "should" means "whether to award costs ultimately lies within the sound discretion of the district court." *Marx*, 568 U.S. at 377. If a court exercises its discretion to deny full costs, the court "must have and state a sound basis." *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000) (en banc). Neither good faith nor limited financial resources can overcome the presumption. *Pickett v. Iowa Beef Processors*, 149 F. App'x 831, 832 (11th Cir. 2005). Moreover, a court abuses its discretion if it considers the relative wealth of opposing parties. *Chapman*, 229 F.3d at 1039.

The rule works with 28 U.S.C. § 1920, under which a court may tax only specified costs. *Maris Distr. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002). Section 1920 allows as taxable costs only:

(1)     Fees of the clerk and marshal;

(2)     Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)     Fees and disbursements for printing and witnesses;

(4)     Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)     Docket fees …; [and]

> (6)     Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services[.]

28 U.S.C. § 1920.

"[A]s is evident from § 1920," costs are "limited to relatively minor, incidental expenses" and "almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (internal quotation marks omitted). A court may decline to tax costs in § 1920 but may not tax costs not in § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442–43 (1987).

Costs proposed by a winning party "should always be given careful scrutiny." *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964), *disapproved on other ground, Crawford,* 482 U.S. at 443. If a prevailing party shows requested costs are taxable, the losing party may rebut the presumption favoring their award. *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991).

Here, in its latest proposed bill of costs, Omni had requested these costs in these seven categories:

| | |
|---|---|
| Fees of the Clerk | **$400.00** |
| Fees for service of summons and subpoena | **$179.00** |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case | **$1177.85** |
| Fees and disbursements for printing | **$1154.97** |
| Fees for witnesses | **$110.00** |
| Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case | **$2229.47** |
| Costs as shown on Mandate of Court of Appeals | **$729.95** |
| **TOTAL** | **$5981.24** |

Doc. 114 at 1. Omni's counsel declares under penalty of perjury that these costs "are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed."[8] Doc. 114 at 1.

But based on Omni's amendment at the oral argument, Omni now requests only these costs in these six categories:

| | |
|---|---|
| Fees of the Clerk | **$400.00** |
| Fees for service of summons and subpoena | **$59.00** |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case | **$1177.85** |
| Fees and disbursements for printing | **$1046.30** |
| Fees for witnesses | **$100.00** |
| Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case | **$2188.97** |
| **TOTAL** | **$4972.12** |

First, Omni requests **$400** as fees of the clerk. By statute, "[t]he clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, **removal** or otherwise, to pay a filing fee of $350[.]" 28 U.S.C. § 1914(a) (emphasis added). The clerk also must "collect from the parties such additional fees only as are prescribed by the Judicial Conference of the United States." *Id.* § 1914(b). Section 1920(1) provides no distinction between "fees of the clerk" for instituting an action by original process or for instituting an action by removal.[9] This cost is taxable, *see* 28 U.S.C. §§ 1914(a) & (b), 1920(1), and

---

[8]If there is no challenge, counsel's statement that copies were necessarily obtained for use in the case supports taxing costs of making copies. *See, e.g., Perkins v. Tolen*, No. 3:10-cv-851-J-37TEM, 2012 WL 3244512, at *2 (M.D. Fla. July 13, 2012) (unpublished); *Berryman v. Hofbauer*, 161 F.R.D. 341, 344 n.2 (E.D. Mich. 1995). Here, Ms. Sanford presents no challenge, and no basis for a challenge is apparent.

[9]Judges in this district and elsewhere routinely conclude without analysis that fees to institute an action by removal are "[f]ees of the clerk." *See, e.g., Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, Case No. 8:16-cv-637-T-30TGW, 2017 WL 2215675, at *1 (M.D. Fla. May 19, 2017) (unpublished), *aff'd*, 749 F. App'x 776 (11th Cir. 2018); *Wiercioch v. Verizon Fla., LLC*, No. 8:11–cv–2129–T–30EAJ, 2013 WL 1442060, at *1 (M.D. Fla. Apr. 9, 2013) (unpublished); *see also Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 591 (6th Cir. 2004); *Banks v. Bosch Rexroth Corp.*, 611 F. App'x 858, 861 (6th Cir. 2015); *Card v. State Farm Fire & Cas.*

the request is supported by the docket reflecting that Omni paid the **$400** filing fee when it instituted the action here, Doc. 1 (docket text). Taxing **$400** is warranted.

Second, Omni requests **$59** as fees for service of summons and subpoena. This cost is taxable, *see* 28 U.S.C. § 1920(2), and the request is supported by the ledger reflecting that amount for service of a summons a few weeks before trial on Sarah Gibbs, a former Omni employee and Omni's only witness at the trial, Doc. 72-4 at 1; Docs. 105, 106; Doc. 120 at 6. Taxing **$59** is warranted.

Third, Omni requests **$1177.85** as fees for printed or electronically recorded transcripts necessarily obtained for use in the case. This cost is taxable, *see* 28 U.S.C. § 1920(3), and the request is supported by the ledger reflecting that amount, Doc. 120 at 5, 6, and counsel's unchallenged declaration that the depositions were "necessarily incurred in this action," Doc. 114 at 1. One transcript is Ms. Sanford's deposition. Doc. 120 at 5. Omni used the transcript to support its motion for summary judgment and presumably to prepare for trial. Doc. 19-1; *see EEOC v. W&O, Inc.*, 213 F.3d 600, 621 (11th Cir. 2000) (holding that costs associated with depositions used to support summary judgment are taxable). The other transcript appears to be of the deposition of Dr. Gupta, who Ms. Sanford presented as a witness at trial through his deposition. Doc. 105. Taxing **$1177.85** is warranted.

Fourth, Omni requests **$1046.30** as fees for disbursements for printing. This cost is taxable, *see* 28 U.S.C. § 1920(3), and the request is supported by the ledger reflecting that amount for copies at **$.10** a page, Doc. 120 at 3, 6. Taxing **$1046.30** is warranted.[10]

---

*Co.*, 126 F.R.D. 658, 660 (N.D. Miss. 1989), *aff'd sub nom. Card v. State Farm*, 902 F.2d 957 (5th Cir. 1990).

[10]In the report and recommendation on Omni's original proposed bill of costs, the undersigned recommended reducing the amount Omni claimed for fees for disbursements for printing (at that time, **$154.80**) by **$23.20** (to **$131.60**) because of the unexplained difference in the price to copy a page (some, **$.50** a page; others, **$.10** a page). Doc. 47. Omni had no objection to that recommendation. At the oral argument, Omni's counsel suggested color

Fifth, Omni requests **$100** as fees for witnesses. This cost is taxable, *see* 28 U.S.C. § 1920(3), and the request is supported by the ledger reflecting that amount paid as witness fees for Ms. Gibbs (**$50**) and for Mr. Sanford (**$50**), Doc. 120 at 6. Taxing **$100** is warranted.

Sixth, Omni requests **$2188.97** for fees for exemplification and the costs of making copies of any materials where the copies are necessarily for use in the case. This cost is taxable, *see* 28 U.S.C. § 1920(4), and the request is supported by counsel's unchallenged declaration that the costs were "necessarily incurred in this action," Doc. 114 at 1, and the ledger reflecting that amount for copies of medical records, presumably from Ms. Sanford's medical providers, Doc. 120 at 4–6. Taxing **$2188.97** is warranted.

Costs in these six categories total **$4972.12**. Taxing that amount against Ms. Sanford and for Omni, as the prevailing party, is warranted.

**B.    *Attorney's Fees***

*1.    Florida's Statute and Corresponding Rule*

The law under which Omni seeks attorney's fees—Fla. Stat. § 768.79 and Fla. R. Civ. P. 1.442—is Florida's offer-of-judgment statute and corresponding procedural rule.

Under the statute, if a defendant files an offer of judgment, and the plaintiff fails to accept the offer within 30 days, the defendant "shall" be entitled to recover "reasonable costs and attorney's fees" from the date of the filing if the judgment is for no liability or at least 25 percent less than the offer:

---

copies perhaps could account for the difference but explained Omni still has no objection to reducing costs so that all copies are only **$.10** a page. This report and recommendation reflects that reduction.

> In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him … from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set off such costs and attorney's fees against the award.

Fla. Stat. § 768.79(1). The purpose of the law is to penalize a party who rejects a reasonable settlement offer. *Nunez v. Allen*, 292 So. 3d 814, 818 (Fla. 5th DCA 2019).

2.   *Governing Law*

Here, for the first time, Ms. Sanford contends Georgia has the most significant relationship to the "Trip 'n Fall Incident" because she incurred most of her damages, including $156,871.52 in medical expenses, in Georgia, where she had undergone her knee replacement surgery and rehabilitation. Doc. 118 at 2. She argues Florida's offer-of-judgment statute therefore is inapplicable, and Omni is entitled to nothing under Georgia law. Doc. 118 at 2–3.

If federal jurisdiction is based on diversity, the court, under *Erie R.R. Co. v. Tompkins*, applies the forum state's substantive law, 304 U.S. 64, 78 (1938), and, under *Klaxon Co. v. Stentor Elec. Mfg. Co.*, applies the forum state's choice-of-law rules, 313 U.S. 487, 496 (1941).

For *Erie* purposes, a statute that allows recovery of attorney's fees is substantive. *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001), *amended on reh'g on other grounds*, 311 F.3d 1077 (11th Cir. 2002). Thus, the right to an award of attorney's fees under Florida's offer-of-judgment statute is substantive. *Id.*

For choice-of-law purposes, if the underlying claim for relief is a Florida tort, Florida applies its offer-of-judgment statute. The statute is in a chapter titled "Negligence" and in a part titled "Damages," and the part "applies to any action for damages, whether in tort or in contract." Fla. Stat. § 768.71. "This statutory scheme

13

by its plain language attaches the right to attorney's fees to the underlying cause of action." *Metro. Dade Cty. v. Jones Boatyard, Inc.*, 611 So. 2d 512, 514 (Fla. 1993); *see Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 89 F. Supp. 3d 1294, 1299 (M.D. Fla. 2015) (applying Florida's offer-of-judgment statute where the underlying claim for relief was a Florida tort); *Strait v. Busch Entm't Corp.*, No. 8:05-cv-1864-T-24MAP, 2007 WL 496605, at *2 (M.D. Fla. Feb. 12, 2007) (unpublished) (same); *cf. Tanker Mgmt., Inc. v. Brunson*, 918 F.2d 1524, 1528–29 (11th Cir. 1990) (affirming an attorney's fee award based on another Florida law providing for attorney's fees and explaining a defendant in a diversity action "is entitled to invoke the protection available to him if the case had been brought in state court").

Here, judicial estoppel prevents Ms. Sanford from now contending that Georgia law governed her negligence claim so Georgia law now governs attorney's fees. Judicial estoppel—a doctrine designed to protect the integrity of the judicial process—prevents a party from "deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). No prerequisites govern the doctrine's application, but courts generally consider whether a party's later position clearly contradicts the party's earlier position, whether the party persuaded a court to accept its earlier position, and whether the party would derive an unfair advantage or the opposing party would suffer an unfair detriment absent estoppel. *Id.* at 750–51.

As explained, all involved—the parties, this Court, and the Eleventh Circuit—assumed Ms. Sanford was bringing her negligence claim under Florida law and therefore applied Florida law. *See* Doc. 19 at 6 (Omni's motion for summary judgment); Doc. 24 at 3 (the Sanfords' response); Doc. 41 at 11–19 (order granting summary judgment); Appellant Br. at 12–19 (the Sanfords' principal brief); Appellee Br. at 12–24 (Omni's response brief); Reply Br. at 6–7 (the Sanfords' reply brief); Doc. 48 at 2 (Eleventh Circuit's opinion); Doc. 72 at 4, 9 (the parties' pretrial statement); Doc. 83 (Omni's proposed jury instructions); Doc. 94 (the Sanfords' proposed jury

instructions); Doc. 109 at 16, 19, 21 (the Court's proposed jury instructions); Doc. 110 at 11–16 (the Court's final jury instructions). Ms. Sanford not only failed to object to applying Florida law but applied Florida law herself. To protect the integrity of the judicial process, estoppel should prevent her from switching positions and now contending that Georgia law governed her negligence claim so Georgia law now governs attorney's fees.

Alternatively, Ms. Sanford's argument fails under Florida's choice-of-law rules. *See Klaxon*, 313 U.S. at 496. To determine which substantive law governs a claim for relief, Florida applies the "most significant relationship" test from the Restatement (Second) of Conflict of Laws. *Id.* (citing *Bishop v. Fla. Specialty Paint Co.,* 389 So. 2d 999, 1001 (Fla. 1980)). To determine the "most significant relationship," the court considers "'(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'" *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (quoting *Bishop,* 389 So. 2d at 1001, and Restatement (Second) of Conflict of Laws § 145). In determining the choice of law for a tort, the place where the injury occurred ordinarily is "the decisive consideration." *Bishop*, 389 So. 2d at 1001.

Here, three of the four factors—including the ordinarily decisive one—support that Florida has the most significant relationship to this action. The injury caused by Ms. Sanford's fall occurred in Florida (the first factor). Omni's conduct allegedly causing the injury occurred in Florida (the second factor). And the parties' relationship—derived from only the injury and litigation—is in Florida (the fourth factor). The only other factor is neutral because each side has a different domicile, citizenship, place of incorporation, or place of business (the third factor). Doc. 1 ¶ 6 (alleging the Sanfords are Georgia citizens); Doc. 1 ¶ 7 (alleging Omni is incorporated in Delaware and has its principal place of business in Texas). That Ms. Sanford

15

incurred some or all medical expenses in Georgia does not outweigh the strength of those factors supporting that Florida has the most significant relationship to this action. She cites no case, and the undersigned can find no case, to support concluding otherwise.

Ms. Sanford summarily asserts, "In applying Florida's choice-of-law principles, the Eleventh Circuit Court of Appeals has ruled that '[the] Supreme Court of Florida would hold that [Florida's offer-of-judgment statute] is not a local law rule prescribing how litigation shall be conducted.' *McMahon* [sic] *v. Toto*, 256 F.3d 1120, 1133 (11th Cir. 2001)," Doc. 118 at 1 (internal quotation marks in *McMahan* omitted). In the case on which Ms. Sanford relies—*McMahan*—, the Eleventh Circuit continued, "Instead, [the Florida Supreme Court] would hold that [Florida's offer-of-judgment statute] modifies the substantive rights of the parties." *McMahan*, 256 F.3d at 1133. That the Eleventh Circuit determined the Florida Supreme Court would find Florida's offer-of-judgment statute modifies the substantive rights of the parties does not help Ms. Sanford's position, and why she relies on an incomplete quotation from that case is unclear.[11]

Ms. Sanford argues Texas law has no significant relationship to the action and observes Texas law would permit no award of attorney's fees or costs. Doc. 118 at 2 & n.1. Doc. 122 at 2 & n.1. The only connection to Texas is Omni's principal place of business and Omni's lead trial counsel, Mr. Hoblit. Neither side suggests—and the

---

[11]In *McMahan*, the Eleventh Circuit held, "Florida choice-of-law principles compel the application of Virginia law on attorney's fees" where the underlying claim was based on Virginia law. 256 F.3d at 1135. A Florida appellate court later expressly disagreed with the holding. *See BDO Seidman, LLP v. British Car Auctions, Inc.*, 802 So. 2d 366, 369 (Fla. 4th DCA 2001). The disagreement prompted the Eleventh Circuit to rescind its earlier decision and hold that Florida's offer-of-judgment statute applies to an action "tried in the State of Florida even though the substantive law that governs the case is that of another state." *McMahan v. Toto*, 311 F.3d 1077, 1081, 1086 (11th Cir. 2002). The Florida Supreme Court later disapproved of the Florida appellate court's opinion. *See SE Floating Docks, Inc. v. Auto-Owners Ins. Co.*, 82 So. 3d 73, 81–82 (Fla. 2012). Ms. Sanford's position here finds no support in this line of cases.

law would not support—that Texas law governed the underlying negligence claim or now governs attorney's fees.

In short, Ms. Sanford's argument that Georgia law applies fails whether based on judicial estoppel or based on applying Florida's choice-of-law rules, which compel the conclusion that Florida law governed her negligence claim and, therefore, now governs attorney's fees. Because the underlying claim for relief is based on Florida law, Florida's offer-of-judgment statute applies.

*3.    Good Faith*

Alternatively, Ms. Sanford argues that even if Florida's offer-of-judgment statute applies, the Court should decline to award attorney's fees to Omni because Omni failed to act in good faith when it proposed settlement. Doc. 118 at 3. She provides no basis for the argument except to observe the proposal was $10,000 even though her medical bills totaled $156,871.52 and to contend the difference "forc[ed]" her "to proceed to a trial by jury."[12] Doc. 118 at 3.

Florida's offer-of-judgment statute specifies requirements for validity. An offer must: (1) be in writing, (2) state the offer is being made pursuant to section 768.79, (3) name the party making the offer, (4) name the party to whom the offer is being made, (5) state with particularity the amount offered to settle any claim for punitive damages, and (6) state the total amount. Fla. Stat. § 768.79(2).

Florida's corresponding rule adds additional requirements. An offer also must: (1) be served no earlier than 90 days after the action has been commenced (if to a plaintiff), (2) be served within 45 days before the date set for trial or the first day of the trial docket, whichever is earlier, (3) "state that the proposal resolves all damages

---

[12]During her deposition, Ms. Sanford testified that insurance covered all her medical expenses from the fall except for approximately $3545. Doc. 19-1 at 10, 126–28. She does not explain how the medical bills "forced" her to proceed to trial by jury instead of accepting the $10,000 proposal. *See generally* Doc. 118.

that would otherwise be awarded in a final judgment in the action in which the proposal is served," (4) state with particularity any condition, (5) state with particularity any nonmonetary term, and (6) state whether the proposal includes attorney's fees and whether attorney's fees are part of the claim.[13] Fla. R. Civ. P. 1.442(b), (c)(2)(C), (c)(2)(B), (c)(2)(D), (c)(2)(F). The latter statement is unnecessary where, as here, *see generally* Doc. 2, the plaintiff made no demand for attorney's fees in the complaint. *Am. Home Assurance Co. v. D'Agostino*, 211 So. 3d 63, 67–68 (Fla. 4th DCA 2017).

Because the statute and the rule derogate from the common-law rule that each party pays his own fees, a court must strictly construe the requirements. *Campbell v. Goldman*, 959 So. 2d 223, 226 (Fla. 2007). Still, a court should not "nitpick" a proposal based on an allegation of ambiguity unless the asserted ambiguity could reasonably affect the offeree's decision. *Kiefer v. Sunset Beach Invs., LLC*, 207 So. 3d 1008, 1011 (Fla. 4th DCA 2017).

Here, Omni's proposal for settlement clearly satisfies the requirements for validity, and Ms. Sanford does not contend otherwise.[14] *See generally* Doc. 118. Instead, she focuses her argument on the asserted absence of good faith.

---

[13]For *Erie* purposes, most—presumably all—of those twelve requirements are substantive. *See Horowitch v. Diamond Aircraft Indus.*, 645 F.3d 1254, 1258 (11th Cir. 2011) (holding that requiring the offer to state whether the proposal includes attorney's fees and whether attorney's fees are part of the claim is substantive); *Divine Motel Grp., LLC v. Rockhill Ins. Co.*, 722 F. App'x 887, 889 (11th Cir. 2018) (holding that requiring service within certain timeframes is substantive); *Primo v. State Farm Mut. Auto. Ins. Co.*, 661 F. App'x 661, 664 n.1 (11th Cir. 2016) (observing that requiring the offer to "state that the proposal resolves all damages that would otherwise be awarded in a final judgment in the action in which the proposal is served" is "likely" substantive). Other requirements are procedural. *See Horowitch*, 645 F.3d at 1258 (holding that requiring the offer to include a certificate-of-service is procedural).

[14]Because Omni's proposal for settlement clearly satisfies the requirements for validity, and Ms. Sanford does not contend otherwise, the undersigned relegates the analysis of the requirements to this footnote.

The proposal is in writing. *See* Doc. 115 at 23–28 (written proposal for settlement).

The proposal states it is made pursuant to section 768.79 and names the party making the offer. *See* Doc. 115 at 22 ("Defendant, OMNI HOTELS MANAGEMENT CORPORATION, … pursuant to Section 768.79, Florida Statutes, respectfully serves this Proposal for Settlement to Plaintiff, BILLIE SANFORD[.]"); Doc. 115 at 22 ("The name of the party making this Proposal is Defendant, OMNI HOTELS MANAGEMENT CORPORATION and the party to whom the Proposal is being made is Plaintiff, BILLIE SANFORD."); Doc. 115 at 24 ("The Proposal is made to Plaintiff, BILLIE SANFORD, pursuant to § 768.79, Florida Statutes. This proposal is made by Defendant, OMNI HOTELS MANAGEMENT CORPORATION, pursuant to § 768.79, Florida Statutes.").

The proposal states with particularity the amount offered to settle any claim for punitive damages. *See* Doc. 115 at 23 ("There is no claim for punitive damages by Plaintiff, BILLIE SANFORD, against Defendant, OMNI HOTELS MANAGEMENT CORPORATION. However, this Proposal for Settlement is intended to resolve any and all claims by Plaintiff, BILLIE SANFORD against Defendant, OMNI HOTELS MANAGEMENT CORPORATION.").

The proposal states the total amount. *See* Doc. 115 at 23 ("The total amount of this Proposal is TEN THOUSAND DOLLARS and ZERO CENTS ($10,000.00)[.]").

Omni served the proposal no earlier than 90 days after the action was commenced and no later than 45 days before the first day of the trial docket, which was earlier than the date set for trial. *See* Doc. 2 (complaint filed in state court on October 21, 2016); Doc. 115 (proposal for settlement served on August 23, 2019); Doc. 55 (order setting trial for term beginning on October 7, 2019, which is exactly 45 days after August 23, 2019); Doc. 75 (order setting trial for October 28, 2019). Ms. Sanford makes no suggestion the original trial date should govern, and any such suggestion would lack merit because remand necessitated a new trial date.

The proposal states that it resolves all damages that would otherwise be awarded in a final judgment in the action. *See* Doc. 115 at 23 ("The claims that this Proposal attempts to resolve are any and all claims of Plaintiff, BILLIE SANFORD which have been asserted against, OMNI HOTELS MANAGEMENT CORPORATION, in this action, and only this action, arising out of the accident that occurred on or about November 5, 2014, as alleged in Plaintiff's Complaint in the above-styled lawsuit.").

The proposal states with particularity any condition. *See* Doc. 115 at 23 ("The only relevant conditions to this Proposal are as follows: (A) The Attorney for Plaintiff, BILLIE SANFORD, will execute a Notice of Voluntary Dismissal with Prejudice in favor of Defendant, OMNI HOTELS MANAGEMENT CORPORATION, and (B) execution of the attached Release of All Claims by Plaintiff, BILLIE SANFORD[.]").

The proposal states with particularity any nonmonetary term. *See* Doc. 115 at 23 ("There are no non-monetary terms of this Proposal other than as stated above [in the statement concerning conditions].").

And, finally, the proposal states whether it includes attorney's fees. *See* Doc. 115 at 23 ("The amount of the Proposal is inclusive of costs and attorneys' fees."). Because Ms. Sanford did not demand attorney's fees in the complaint, *see generally* Doc. 2, the proposal did not have to state attorney's fees were part of the claim. *See Am. Home Assurance*, 211 So. 3d at 67–68.

19

Florida's offer-of-judgment statute provides that, even if a party is entitled to attorney's fees and costs, "the court may, in its discretion, determine that an offer was not made in good faith [and] disallow an award[.]" Fla. Stat. § 768.79(7)(a). The corresponding rule similarly provides, "If a party is entitled to costs and fees pursuant to applicable Florida law, the court may, in its discretion, determine that a proposal was not made in good faith. In such case, the court may disallow an award of costs and attorneys' fees." Fla. R. Civ. P. 1.442(h)(1).

If a party is entitled to attorney's fees and costs under Florida's offer-of-judgment statute, the absence of good faith is the only basis for disallowance of an award. *McMahan v. Toto*, 311 F.3d 1077, 1083 (11th Cir. 2002); *see SE Floating Docks, Inc. v. Auto-Owners Ins. Co.*, 82 So. 3d 73, 79 (Fla. 2012) (explaining use of "shall" in statute reflects "intentional policy choice to limit judicial discretion in the award of attorney's fees"); *Jordan v. Food Lion, Inc.*, 670 So. 2d 138, 140 (Fla. 1st DCA 1996) (explaining Florida's offer-of-judgment statute "creates a mandatory right to attorney's fees when the statutory prerequisites have been fulfilled").

An offeror acts in good faith if the offeror has "some reasonable foundation" on which to base the offer. *Mootry v. Bethune-Cookman Univ., Inc.*, 186 So. 3d 15, 22 (Fla. 5th DCA 2016) (quoted authority omitted). The obligation of good faith does not "demand that an offeror necessarily possess, at the time [the offeror] makes an offer …, the kind or quantum of evidence needed to support a judgment." *Schmidt v. Fortner*, 629 So. 2d 1036, 1039 (Fla. 4th DCA 1993). An "offer need not equate with the total amount of damages that might be at issue." *Matrisciani v. Garrison Prop. & Cas. Ins. Co.*, No. 4D19-406, 2020 WL 3067749, at *5 (Fla. 4th DCA June 10, 2020) (to be published). If an offeror has a reasonable basis to conclude exposure is nominal or minimal, the offeror makes even a nominal or minimal offer in good faith. *Taylor Eng'g, Inc. v. Dickerson Fla., Inc.*, 221 So. 3d 719, 723 (Fla. 1st DCA 2017).

An offeree must prove the offeror acted without good faith. *Matrisciani*, 2020 WL 3067749, at *5. To determine if an offeree has satisfied that burden, a court

considers "all the surrounding circumstances when the offer was made." *State Farm Mut. Auto. Ins. Co. v. Sharkey*, 928 So. 2d 1263, 1265 (Fla. 4th DCA 2006). "Each case requires its own analysis[] and must be considered on its own facts." *Fox v. McCaw Cellular Comms. of Fla., Inc.*, 745 So. 2d 330, 333 (Fla. 4th DCA 1998). The court asks whether the offer reasonably relates to the amount of damages or realistically assesses liability based on the subjective motivations and beliefs of the offeror. *Matrisciani*, 2020 WL 3067749, at *5 (quoted authority omitted). Whether an offeror believes the offeree will accept the offer is not pertinent. *Arce v. Wackenhut Corp.*, 146 So. 3d 1236, 1238 n.3 (Fla. 3d DCA 2014).

Here, Ms. Sanford fails to satisfy her burden of proving that Omni acted without good faith when it proposed to settle her negligence claim for **$10,000**. The amount—neither nominal nor minimal and made after nearly three years of litigation but before Omni's lawyers had to prepare for trial—realistically assessed Omni's liability. *See* Doc. 2 (complaint filed in state court in October 2016); Doc. 61 (proposal served in August 2019). The proposal followed Omni's receipt of medical records from Ms. Sanford's providers. *See* Doc. 45 at 2–4. The proposal followed Ms. Sanford's deposition, during which she provided testimony supporting Omni's defenses and providing Omni material to vigorously cross-examine her. *See, e.g.,* Doc. 19-1 at 16, 19, 26, 35–40, 49–50, 64, 83, 113–14, 122, 153. The proposal followed summary judgment for Omni based on this Court's determination she had presented insufficient evidence of a dangerous condition. Doc. 41 at 19. And the proposal followed appellate briefing in which Ms. Sanford detailed her case. *See* Appellant Br. at 12–19 (May 11, 2018) (the Sanfords' principal brief); Reply Br. at 6–7 (July 5, 2018) (the Sanfords' reply brief). According to Omni's counsel, Omni knew her theory and her evidence and developed a trial strategy under which Omni would deny negligence, argue comparative fault, and emphasize her pre-existing injuries and conditions. Doc. 115 at 8.

Merely pointing out the difference between the proposal (**$10,000**) and Ms. Sanford's medical bills (**$156,871.52**) is insufficient to establish the absence of good faith, particularly because Omni vigorously contested liability. *See Land & Sea Petroleum, Inc. v. Bus. Specialists, Inc.*, 53 So. 3d 348, 354 (Fla. 4th DCA 2011) ("We agree … the brokers did not meet their burden …. The primary argument which the brokers presented in an attempt to meet their burden was that, after the seller served discovery only on the buyer, the seller's $500 offer on a commission claim that was basically $300,000 could not have been in good faith.") (internal quotation marks, quoted authority, and alterations omitted).

Because Omni's proposal satisfies the requirements for validity and Ms. Sanford fails to satisfy her burden of proving Omni acted without good faith, Omni "shall be entitled to recover reasonable costs and attorney's fees incurred" from "the date of filing" the proposal. *See* Fla. Stat. § 768.79(1) (quoted).

4.    *Reasonableness of Attorney's Fees*

In its motion, Omni had requested **$101,830** in attorney's fees based on **463.3** hours of work at varying hourly rates from August 23, 2019, to November 14, 2019, by two partners, four associates, and two paralegals, primarily to prepare for the trial and to defend Omni at the trial:

| Name | Position/Experience to 2019 | Rate | Hours[15] | Fee |
|---|---|---|---|---|
| Robin Hoblit | Managing Partner/35 years | $325 | 134.3 | **$43,647.50** |
| Michael Milton | Shareholder/21 years | $225 | 165.9 | **$37,327.50** |
| Connor Jackson | Associate/6 years | $200 | 1.6 | **$320** |
| Mariana Garza | Associate/10 years | $200 | 3.6 | **$720** |
| Amanda Marcum | Associate/3 years | $200 | 38.7 | **$7740** |
| Erin Johnston | Associate/7 years | $180 | 19.6 | **$3528** |
| Maureen Head | Paralegal/27 years | $85 | 65.4 | **$5559** |
| Charles O'Brien | Paralegal/34 years | $90 | 33.2 | **$2988** |
| **TOTAL** | | | | **$101,830** |

Doc. 115-1 at 6–9; Doc. 115-2 at 5–12. Through their respective affidavits, Mr. Milton and Mr. Hoblit state the ledgers they provide are true and correct summaries of a reasonable number of hours expended and required to defend this action since August 23, 2019. Docs. 115-1 at 2, 115-2 at 2.

But at the oral argument, Omni amended the amount by eliminating requests for attorney's fees for traveling (**21.5** hours/**$6987.50** for Mr. Hoblit), for learning the local rules (**3.4** hours/**$680** for Ms. Marcum), for litigating the amount of attorney's fees (**3.7** hours/**$615** for Mr. Hoblit and Ms. Head), and for work insufficiently described due to heavy redactions (**$21,655** from the ledger from Mr. Hoblit's firm and **$2011.50** from the ledger from Mr. Milton's firm). The amendment results in a request totaling **$69,881**.

Ms. Sanford contends the Court should award Omni less than the amount Omni requests—even as amended—because some work was performed on the day of the offer of judgment, lawyers duplicated work, work includes "ambiguous" strategic discussions among the defense team, some work is described in a block instead of in

---

[15]In his affidavit, Mr. Milton states he worked 166.90 hours. Doc. 115-1 at 2. The number appears to be a typo; the ledger and calculation he makes show he worked **165.90** hours. Doc. 115-1 at 2, 5.

The ledger Mr. Milton includes with his affidavit identifies another timekeeper as "37" who performed **2.6** hours of work to obtain medical records. Doc. 115 at 6–8. The timekeeper's hours are not included in Omni's request for fees, *see generally* Docs. 115, 115-1, and therefore not included here.

a discrete entry, and Florida law permits no recovery of a paralegal's fees. Docs. 118, 125 (quoted).

"Just as a federal court must apply state law to determine whether a party is entitled to fees, [the court] must also apply state law to resolve disputes about the reasonableness of fees." *Kearney v. Auto–Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1373 (M.D. Fla. 2010); *see also Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 775 F.3d 242, 248 (5th Cir. 2014) ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision."); *Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1148 (11th Cir. 1993) (observing that the Eleventh Circuit's "task is simplified" in reviewing reasonableness of attorney's fees award under mortgage contracts governed by state law because the state's law, like federal law, uses the lodestar approach to assess reasonableness).

In *Fla. Patient's Comp. Fund v. Rowe*, the Florida Supreme Court determined that the federal lodestar approach is a "suitable foundation for an objective structure" upon which to base an attorney's fees award. 472 So. 2d 1145, 1150 (Fla. 1985). The court instructed that, in calculating reasonable fees, a trial court must determine the number of hours reasonably expended by the attorney, determine a reasonable hourly rate for those services, and then multiply the figures to arrive at a "lodestar" amount. *Id.* at 1150−51.

The court explained that, in determining the lodestar, a court should use the criteria in Disciplinary Rule 2-106(b) of the Florida Bar Code of Professional Responsibility (now Rule 4-1.5(b)(1) of The Rules Regulating The Florida Bar). *Id.* at 1150; *accord Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 830 & n.3 (Fla. 1990). The criteria are:

> (A)    the time and labor required, the novelty, complexity, difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (B)    the likelihood that the acceptance of the particular employment

will preclude other employment by the lawyer;

(C)     the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;

(D)     the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;

(E)     the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;

(F)     the nature and length of the professional relationship with the client;

(G)     the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and

(H)     whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.

Rule 4-1.5(b)(1).[16]

In awarding attorney's fees under Florida's offer-of-judgment statute, using a multiplier is inappropriate. *Sarkis v. Allstate Ins. Co.*, 863 So. 2d 210, 222 (Fla. 2003).

---

[16]Citing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Florida Supreme Court observed, "These factors are essentially the same as those considered by the federal courts in setting reasonable attorneys' fees. The United States Supreme Court has sanctioned the use of the *Johnson* factors by federal courts." *Rowe*, 472 So. 2d at 1150 n.5. After *Rowe*, the United States Supreme Court criticized the *Johnson* method as a means of determining reasonable attorney's fees to the extent it operated separate from the lodestar method, explaining, "Its major fault was that it gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986), *supplemented by*, 483 U.S. 711 (1987). The Florida Supreme Court endorsed the factors not separately from the lodestar method but as part of the lodestar method. *See Rowe*, 472 So. 2d at 1150−51.

But considering additional criteria is required. Florida's offer-of-judgment statute and corresponding rule explain:

> (b) When determining the reasonableness of an award of attorney's fees pursuant to this section, the court *shall* consider, along with all other relevant criteria, the following additional factors:
>
>> 1. The then apparent merit or lack of merit in the claim.
>>
>> 2. The number and nature of offers made by the parties.
>>
>> 3. The closeness of questions of fact and law at issue.
>>
>> 4. Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.
>>
>> 5. Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.
>>
>> 6. The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.

Fla. Stat. § 768.79(7)(b) (emphasis added); Fla. R. Civ. P. 1.442(h)(2) (emphasis added); *see Ruiz v. Policlinica Metropolitana, C.A.,* 260 So. 3d 1081, 1091 (Fla. 3d DCA 2018) (emphasizing "shall" and holding trial court had not considered the criteria as required).

Whether under Florida or federal law, the fee applicant must prove requested attorney's fees are reasonable by submitting evidence to support the hours worked and the rates charged. *Hamilton v. Ford Motor Co.*, 936 So. 2d 1203, 1206 (Fla. 4th DCA 2006); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Under Florida law, a judge has a "special responsibility over attorney's fees" and should abandon neither common sense nor what the judge had known as a lawyer. *Ziontz v. Ocean Trail Unit Owners Ass'n, Inc.*, 663 So. 2d 1334, 1335 (Fla. 4th

DCA 1993).

Here, considering that special responsibility, the undersigned has carefully reviewed the ledgers from Mr. Milton's and Mr. Hoblit's respective firms, Docs. 115-1, 115-2, 127. The undersigned has undertaken this review in view of the criteria in *Rowe* and Florida's offer-of-judgment statute.

The action is an ordinary trip-and-fall action involving pure factual issues of negligence and damages, lacking novelty, lacking complexity, involving an ordinary record, posing no difficult question, and requiring no special skill beyond trial skill. *See* Rule 4-1.5(b)(1)(A) (criterion one: "the time and labor required, the novelty, complexity, difficulty of the questions involved, and the skill requisite to perform the legal service properly").

Counsel makes no suggestion that representing Omni precluded them from representing others (only that representing Omni precluded them from billing others for the same time and required them to alter their schedules, Doc. 115 at 10). *See* Rule 4-1.5(b)(1)(B) (criterion two: "the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer").

The hourly rate customarily charged in Jacksonville to prepare and try a negligence action before a jury is, based on the undersigned's experience, approximately $75 to $110 for a paralegal, $150 to $225 for an associate, and $200 to $350 for a partner. *See* Rule 4-1.5(b)(1)(C) (criterion three: "the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature").

Ms. Sanford sought damages of $1.2 million, counsel had to defend Omni before a jury, and the lawyers achieved an excellent result: a defense verdict in less than an hour. *See* Rule 4-1.5(b)(1)(D) (criterion four: "the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained").

The action demanded counsel's time for the trial, lasting four days, and for the trial preparation. *See* Rule 4-1.5(b)(1)(E) (criterion five: "the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client").

Mr. Milton and Mr. Hoblit both have a relationship with Omni. Mr. Milton has represented Omni throughout Florida for six years, and Mr. Hoblit has represented Omni for more than thirty years and serves as Omni's national trial counsel. Doc. 115 at 15; 115-1 at 2; *see* Rule 4-1.5(b)(1)(F) (criterion six: "the nature and length of the professional relationship with the client").

Mr. Milton and Mr. Hoblit both are skilled and experienced lawyers with good reputations. *See* Rule 4-1.5(b)(1)(G) (criterion seven: "the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services"). Both are admitted to practice in multiple courts, both are AV-peer rated, both have been practicing law for more than two decades, and both have represented clients at jury trials (Mr. Milton, more than a dozen times; Mr. Hoblit, more than seventy times). Docs. 115-1, 115-2. The associates each have more than three years of experience. Doc. 115 at 12–13. The paralegals each have more than 25 years of experience. Doc. 115 at 14.

The fee was fixed and independent of the outcome. Doc. 115 at 15–16; *see* Rule 4-1.5(b)(1)(H) (criterion eight: "whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation").

The negligence claim had merit to the extent the claim warranted a trial. *See* Fla. Stat. § 768.79(7)(b)(1) ("[T]he court shall consider … [t]he then apparent merit or lack of merit in the claim.").

Omni made only one proposal to Ms. Sanford under Florida's offer-of-judgment

statute, and the parties presumably exchanged demands and offers at the mediation. *See* Fla. Stat. § 768.79(7)(b)(2) ("[T]he court shall consider … [t]he number and nature of offers made by the parties.").

The action involved pure factual issues of negligence and damages, with the facts appearing to favor Omni. *See* Fla. Stat. § 768.79(7)(b)(3) ("[T]he court shall consider … [t]he closeness of the questions of fact and law at issue.").

Nothing in the record suggests Omni refused to furnish Ms. Sanford information necessary to evaluate the reasonableness of the proposal. *See* Fla. Stat. § 768.79(7)(b)(4) ("[T]he court shall consider … [w]hether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer."). No discovery dispute arose, and, by the time Omni proposed the settlement, the parties had fully briefed summary judgment and the appeal.

The action presented no question of far-reaching importance affecting non-parties. *See* Fla. Stat. § 768.79(7)(b)(5) ("[T]he court shall consider … [w]hether the suit was in the nature of a test case presenting questions of far-reaching importance affecting non-parties.").

Omni reasonably expected to incur the cost and expense necessary for trial preparation and the trial. *See* Fla. Stat. § 768.79(7)(b)(6) ("[T]he court shall consider … [t]he amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.").

Of these criteria, favoring Ms. Sanford, the action is an ordinary trip-and-fall action involving pure factual issues of negligence and damages, lacking novelty, lacking complexity, involving an ordinary record, posing no difficult question, and requiring no special skill beyond trial skill. Favoring Omni, skilled and experienced lawyers had to prepare for and defend Omni against a claim for $1.2 million at a four-day jury trial, and the lawyers achieved an excellent result.

Ms. Sanford does not contest the reasonableness of the hourly rates Omni requests ($325 for Mr. Hoblit, $225 for Mr. Milton, $180 and $200 for the associates, and $85 and $90 for the paralegals, Doc. 115-1 at 6–9; Doc. 115-2 at 5–12), *see generally* Docs. 118, 125, and no basis for contesting them is apparent. This report and recommendation therefore focuses on the disputed number of hours counsel reasonably expended on the litigation.[17]

In calculating the number of hours reasonably expended on the litigation, the fee applicant "should present records detailing the amount of work performed." *Rowe*, 472 So. 2d at 1150. The fee applicant must use billing judgment, and if the applicant does not, the court must do it for the applicant, "cut[ting] the amount of hours for which payment is sought" by "pruning out those that are excessive, redundant, or otherwise unnecessary." *22nd Century Props., LLC v. FPH Props., LLC*, 160 So. 3d 135, 142–43 (Fla. 4th DCA 2015). If the billing records appear reasonable otherwise, "the opponent of the fee has the burden of pointing out with specificity which hours should be deducted." *Centex-Rooney Const. Co. v. Martin Cty.*, 725 So. 2d 1255, 1259 (Fla. 4th DCA 1999).

If reductions are warranted, a court may conduct an hour-by-hour analysis or reduce the hours by an across-the-board percentage. *Bivins v. Wrap it Up*, 548 F.3d 1348, 1350 (11th Cir. 2008). If reducing by a percentage, the court must articulate the reason for selecting a particular percentage. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). The court may not "double discount" by both deducting specific

---

[17]Considering Florida's criteria for determining reasonableness, Omni has established the reasonableness of the rates Omni requests. As stated, Mr. Milton, requesting a rate of **$225** an hour, and Mr. Hoblit, requesting a rate of **$325** an hour, are both admitted to practice in multiple courts, are both are AV-peer rated, have both been practicing law for more than two decades, and have both represented clients at jury trials (Mr. Milton, more than a dozen times; Mr. Hoblit, more than seventy times). Docs. 115-1, 115-2. The associates, requesting rates of **$185** and **$200** an hour, each have more than three years of experience. Doc. 115 at 12–13. The paralegals, requesting rates of **$85** and **$90** an hour, each have more than 25 years of experience. Doc. 115 at 14.

hours and applying an across-the-board reduction. *Bivins*, 548 F.3d at 1351–52.

Through the ledgers and affidavits of Mr. Milton and Mr. Hoblit, Omni shows that some but not all hours requested are reasonable. Reductions therefore are warranted. Because of heavy redactions, block billing, and Omni's failure to identify by line-item the work for which it no longer seeks fees, the reduction cannot be accomplished by line-item and must be done by an across-the-board percentage.

The percentage should reflect that nearly all entries on Mr. Milton's ledger and a few entries on Mr. Hoblit's ledger are in a block-billing format. *See, e.g.,* Doc. 115-1 at 6–9 (Mr. Milton's entry on September 16, 2019, for 5.5 hours: "Further revisions to Opposition to Plaintiff's Motion in Limine and finalize. Revise and finalize Objections to Dr. Gupta deposition. Revise Pretrial Stipulation along with witness and exhibit lists. Multiple discussions with Clay Hoblit. Conference with Erin Johnston regarding drafting proposed jury instructions. Multiple attempts to contact Plaintiff's counsel regarding Pretrial Statement. Receive Plaintiff's proposed pretrial statement and respond with changes. Teleconference with Plaintiff's attorney.").

Both federal and Florida courts frown on block billing because block billing renders determining the reasonableness of time spent on a task impossible, leaving the court to approximate the time that should be allocated to each task. *See, e.g., Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004); *Green v. City of NY*, 403 F. App'x 626, 630 (2d Cir. 2010); *Envtl. Mfg. Sols., LLC v. Peach State Labs, Inc.*, 274 F. Supp. 3d 1298, 1324 (M.D. Fla. 2017); *Moore v. Kelso-Moore*, 152 So. 3d 681, 682 (Fla. 4th DCA 2014). This Court has emphasized, "While attorneys cannot be expected to account for every second of their time, they should be expected to explain in discrete entries the nature of the work that they want a client or opposing party to pay them[.]" *Kearney*, 713 F. Supp. 2d at 1378.

A fee applicant's use of block billing is viewed as a failure to satisfy the applicant's burden. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007)

("The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. … It was reasonable for the district court to conclude that [the applicant] failed to carry her burden, because block billing makes it more difficult to determine how much time was spent on particular activities."); *see also Hensley*, 461 U.S. at 437 (holding that a fee applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims").[18]

To account for the failure, a court may apply an across-the-board reduction. *See Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203–04 (11th Cir. 2012) (upholding ten-percent reduction for block billing); *Johnston v. Borders,* No. 6:15-cv-936-Orl-40DCI, 2019 WL 8105896, at *1 (M.D. Fla. July 30, 2019) (unpublished) (applying ten-percent reduction for block billing); *Rabco Corp. v. Steele Plaza, LLC*, Case No. 6:16-cv-1858-Orl-40LRH, 2019 WL 5188601, at *16 (M.D. Fla. July 29, 2019) (unpublished) (recognizing courts in this district usually apply a ten-to-twenty percent reduction for block billing but recommending fifty percent based on "exceedingly unique facts"), *report and recommendation adopted*, Case No. 6:16-cv-1858-Orl-40LRH, 2019 WL 5176284 (M.D. Fla. Aug. 13, 2019) (unpublished).

The percentage should reflect Omni's choice to retain multiple lawyers to defend Omni. Mr. Milton had been representing Omni in this action—including during the appeal—for nearly three years when Omni retained Mr. Hoblit and others from Mr. Hoblit's firm. Both Mr. Milton and Mr. Hoblit have a relationship with Omni. Doc. 115 at 15; 115-1 at 2. Both Mr. Milton and Mr. Hoblit have substantial experience. Docs. 115-1 at 1–2, 115-2 at 1–2. Both Mr. Milton and Mr. Hoblit have trial experience, though Mr. Hoblit has substantially more trial experience. Docs. 115-1 at 1–2, 115-2 at 1–2. The retention of two experienced and skilled partners, along with  associates and paralegals from both of their firms, resulted in at least

---

[18]At oral argument, Mr. Milton correctly observed the entries on his ledger are detailed, but block billing still prevents knowing the time spent on each task.

some duplicative work and billing by all for the same conversations, meetings, or events.

Having a bigger defense team can advantage a client. But having a bigger defense team is more expensive. In the fee-shifting context, who should bear the added expense for the added advantage? Florida courts answer the question against the fee applicant, resisting the assessment of attorney's fees for work by more than one lawyer if one lawyer would have sufficed. *See State Farm Fla. Ins. Co. v. Alvarez*, 175 So. 3d 352, 356 (Fla. 3d DCA 2015) ("A court should be extremely wary of paying fees to so many lawyers for such a relatively small case with relatively straightforward legal issues and no precedential value."), *disapproved on other grounds, Joyce v. Fed. Nat'l Ins. Co.*, 228 So. 3d 1122, 1125 (Fla. 2017); *N. Dade Church of God, Inc. v. JM Statewide, Inc.*, 851 So. 2d 194, 196 (Fla. 3d DCA 2003) ("The time sheets also reflect a significant amount of time spent in conferences between the partner and the associate who were working on the case as well as multiple attorneys performing or reviewing the same items. Duplicative time charged by multiple attorneys working on the case are generally not compensable."); *Rathmann v. Rathmann*, 721 So. 2d 1218, 1220 (Fla. 5th DCA 1998) ("While the parties have the right to employ as many lawyers as they choose, the Court will not assess lawyer fees for or against any party for more than one lawyer for a matter in which more than one lawyer is not required."); *Brevard Cty. v. Canaveral Properties, Inc.*, 696 So. 2d 1244, 1245 (Fla. 5th DCA 1997) ("In making an attorney fee award, the court must consider the possibility of duplicate effort arising from multiple attorneys[.] … [D]uplicate tasks performed by multiple attorneys does not meet that criterion of reasonableness."); *Fla. Birth-Related Neurological Injury Comp. Ass'n v. Carreras*, 633 So. 2d 1103, 1110 (Fla. 3d DCA 1994) ("The claimants' original counsel elected to enlist co-counsel from another firm who had considerable experience in cases involving infant brain injury. A co-counsel arrangement was agreed to, in which each counsel performed part of the work. Over the course of the case, this resulted in a significant number of hours being reflected on counsels' respective time sheets as

time communicating with each other. Such duplicate time should be eliminated. …
While it is claimants' prerogative to use co-counsel, we do not think that the
intercommunication time can be fairly charged against NICA."); *Tomaino v. Tomaino*,
629 So. 2d 874, 875 (Fla. 4th DCA 1993) ("[B]oth prominent high-priced lawyers
worked on the case plus various associates and paralegals from their respective
offices. While there was some testimony that they did not duplicate each other's
efforts, … that was not the case. For instance, if … the Florida attorney[] drafted a
pleading, he would send it to … the Illinois attorney[] to review. By the credentials
they presented …, both attorneys were very prominent, skilled members of the
marital bar. It does not require one three hundred dollar an hour attorney to review
the work of another equally expensive attorney. One is clearly enough. Even efforts
to charge for the appearance of both lead counsel at hearings, depositions, and trial
should be carefully scrutinized to avoid duplication and excessive fees[.] This is not
the case of the lead counsel having the assistance of associates. Instead, we have two
lead counsels both charging top dollar for their duplicative efforts. Nothing was
shown that the services of both were essential.").

The percentage also should reflect that Omni unsuccessfully defended against
part of Ms. Sanford's motion in limine. Doc. 73. Fees are unavailable for work on an
issue on which the fee applicant was unsuccessful. *N. Dade Church of God, Inc.*, 851
So. 2d at 196. Because of redactions and block billing, how much time the lawyers
spent defending against the motion is unclear from the ledgers.

The percentage should not reflect that Omni now requests less than it
originally requested because Omni's original request included fees unavailable under
Florida law and failed either to describe the entries in a manner that would not
require heavy redaction or to request to file privileged or protected information under
seal.[19]

---

[19]Omni withdrew its request for fees for Mr. Hoblit's travel. Under Florida law, fees
incurred for travel are allowed with proof that the fee applicant could not obtain a competent

Striving to arrive at a reasonable fee considering the circumstances and the criteria in *Rowe* and Florida's offer-of-judgment statute, the undersigned recommends an across-the-board reduction of twenty-five percent from the starting point (**$69,881**). The percentage accounts for block billing and Omni's retention of multiple partners, associates, and paralegals to perform the work. The percentage is not higher because Mr. Milton and others in his firm performed discrete work that Mr. Hoblit—at a much higher rate—would have had to perform otherwise, such as taking Dr. Gupta's deposition, responding to arguments about the post-remand status of Mr. Sanford's consortium claim, obtaining certifications of medical records, and preparing jury instructions. The resulting amount is **$52,410.75**.

Two of Ms. Sanford's arguments about fees for particular work are without merit.

First, Ms. Sanford contends fees for work performed on the day Omni served the proposal for settlement (August 23, 2019) are unavailable. Doc. 118 at 3–4. On that day, Mr. Milton prepared to depose Dr. Gupta, traveled to and from Atlanta for the deposition, and discussed the deposition with Mr. Hoblit (**11 hours/$2475**); and a paralegal with Mr. Milton's firm assisted by identifying treating records for the

---

local lawyer. *Dish Network Serv. LLC v. Myers*, 87 So. 3d 72, 78–79 (Fla. 2d DCA 2012); *Mandel v. Decorator's Mart, Inc. of Deerfield Beach*, 965 So. 2d 311, 315 (Fla. 4th DCA 2007). That proof was lacking here.

Omni withdrew its request for fees for Ms. Marcum to learn the local rules. Because a lawyer ordinarily would not charge a client a fee to learn the local rules, the other side should not have to pay a fee for that type of work. *Paxton v. Great Am. Ins. Co.*, CASE NO. 08-81431-CIV-ZLOCH, 2009 WL 10667079, at *2 (S.D. Fla. June 8, 2009) (unpublished).

Omni withdrew its request for fees for litigating the amount of fees (or possibly litigating the amount of fees; the ledger describing the work includes insufficient detail on this subject). Fees for litigating entitlement to attorney's fees under Florida's offer-of-judgment statute are authorized, but fees incurred in litigating the amount of fees are not authorized. *State Farm Mut. Auto. Ins. Co. v. Markovits*, 295 So. 3d 355, 357 (Fla. 1st DCA 2020) (citing cases).

Omni amended its request to account for work insufficiently described due to heavy redactions. A fee applicant must maintain billing time records in a manner that permits appropriate review. *See Hensley*, 461 U.S. at 437.

deposition (**.5 hours/$45**). Doc. 115-1 at 6 (first two entries in Mr. Milton's ledger). That same day, Omni served and filed the proposal for settlement. Doc. 115 at 21; Doc. 61. Ms. Sanford cites no authority for her argument, *see generally* Doc. 118 at 3–4, and the undersigned can find no authority for her argument. Florida's offer-of-judgment statute states recovery is "from the date of filing of the offer." Fla. Stat. § 768.79(1). Applying the plain language of the statute, recovery includes fees for work performed on the date Omni filed the offer, August 23, 2019. Doc. 61.

Second, again citing no authority, Ms. Sanford argues Florida law does not allow "the recovery of the paralegal fees[.]" Doc. 118 at 4. Contrary to Ms. Sanford's argument, under Florida law, paralegal fees are allowed as a component of the lawyer's work. *State Farm Mut. Auto. Ins. Co. v. Edge Family Chiropractic, P.A.*, 41 So. 3d 293, 296 (Fla. 1st DCA 2010). Here, a paralegal with Mr. Hoblit's firm and a paralegal with Mr. Milton's firm performed legal work such as obtaining medical records and preparing trial exhibits. *See generally* Docs. 115-1, 115-2. Their work described in the ledgers does not appear secretarial or clerical, and Ms. Sanford does not contend otherwise. Under Florida law, fees for work by the paralegals is available.

In short, Omni shows that some but not all hours requested are reasonable. The undersigned recommends applying an across-the-board reduction of twenty-five percent from the starting point (**$69,881** minus **$17,470.25**) and awarding Omni **$52,410.75** in attorney's fees.

## C.  *Post-judgment Interest*

In its motion for attorney's fees, Omni summarily requests post-judgment interest. Doc. 115 at 18. Ms. Sanford presents no argument on the request.

By federal statute, "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Interest shall be computed daily to the date of payment … and shall be compounded annually." *Id.* § 1961(b). Interest is calculated "from the date of the entry of the judgment, at a rate equal to

the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the judgment." 28 U.S.C. § 1961(a).

In a diversity action, the court applies this federal statute, not a state statute. *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 572 n.4 (11th Cir. 1991).

Under this statute, post-judgment interest is mandatory, and the right to it is not waived by a failure to request it. *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1053 (11th Cir. 1994). Indeed, "interest accrues from the date of a judgment whether or not the judgment expressly includes it[.]" *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1339 n.37 (11th Cir. 1999). "[T]he awarding of interest is in no sense a windfall. Because a dollar today is worth more than a dollar in the future, the only way a party can be made whole is to award him interest from the time he should have received the money." *Ga. Ass'n of Retarded Citizens v. McDaniel*, 855 F.2d 794, 798 (11th Cir. 1988) (quoted authority, internal quotation marks, and alteration omitted).

On costs, when a district court taxes costs against the losing party, the award of costs bears interest from the date of the original judgment. *Id.* at 799. On attorney's fees, if the original judgment does not mention the right to attorney's fees and the "prevailing party is unconditionally entitled to such fees by statutory right," an award of attorney's fees bears interest from the original judgment. *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 545 (5th Cir. 1983), *overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174, 1175 (5th Cir. 1986). "If, however, judgment is rendered without mention of attorneys' fees, and the allowance of fees is within the discretion of the court, interest will accrue only from the date the court recognizes the right to such fees in a judgment." *Id.*

Here, the Court entered the original judgment on November 4, 2019. Doc. 112. The award of costs bears interest from that date. *See McDaniel*, 855 F.2d at 794. The

award of attorney's fees also bears interest from that date. *See Copper Liquor, Inc.*, 701 F.2d at 545. Because Omni's proposal for settlement satisfied all requirements for validity and Ms. Sanford failed to show the absence of good faith, Omni is unconditionally entitled to the fees, and the Court lacks the discretion that would warrant interest from the later judgment on attorney's fees, *see SE Floating Docks,* 82 So. 3d at 79 (explaining use of "shall" in statute reflects "intentional policy choice to limit judicial discretion in the award of attorney's fees"); *Jordan*, 670 So. 2d at 140 (explaining statute "creates a mandatory right to attorney's fees when the statutory prerequisites have been fulfilled").

The rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding November 4, 2019, is 1.57 percent.

In short, post-judgment interest on costs (**$4972.12**) and fees (**$52,410.75**) from November 4, 2019, until paid is warranted.

## III.  Recommendation[20]

The undersigned recommends:

1.  **taxing** costs of **$4972.12** against Ms. Sanford;

2.  **granting in part** Omni's motion for attorney's fees, Doc. 115;

3.  **awarding** Omni **$52,410.75** in attorney's fees;

---

[20]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

4.  **specifying** that the costs and fees bear post-judgment interest under 28 U.S.C. § 1961(a) at 1.57 percent from November 4, 2019, until paid; and

5.  **entering** judgment for Omni Hotels Management Corporation and against Billie Sanford for **$4972.12** for costs and **$52,410.75** for attorney's fees, plus post-judgment interest on each amount at 1.57 percent from November 4, 2019, until paid.[21]

Entered in Jacksonville, Florida, on August 19, 2020.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:  The Honorable Marcia Morales Howard
    Counsel of record

---

[21]The Court need not direct the clerk to close the case because the case is already closed.